SEABOARD AIR LINE RAILWAY COMPANY, A CORPORATION, AND THE PULLMAN COMPANY, A CORPORATION, *Plaintiffs in Error,* v. ANNIE W. PARKS, WIDOW, *Defendant in Error.*

Division A.

Opinion Filed May 15, 1925.

1. In a joint action against a railroad company and the Pullman Company, for personal injuries to a passenger riding in a Pullman car attached to the railroad company's train, a challenge for cause should be sustained where it is shown that a talesman at the time of the trial was on a strike against the railroad company, and that members of the same shop craft to which the talesman belonged, worked for the Pullman Company and the railroad company.

2. In a joint action against a railroad company and the Pullman Company for personal injuries to a passenger riding in a Pullman car, attached to the railroad company's train, each of the defendants is entitled to three peremptory challenges.

3. No act in the nature of repairs, improvements, substitution or the like, done after the occurrence of an injury, is receiv-

able as evidence of a consciousness on the part of the owner of negligence, connivance, or other culpability in causing the injury.

Judgment reversed.

A Writ of Error to the Circuit Court for Duval County; Daniel A. Simmons, Judge.

*Fleming & Fleming* and *J. E. & Julian Hartridge,* for Plaintiffs in Error;

*A. H. & Roswell King,* for Defendant in Error.

BROWNE, J.—Mrs. Annie W. Parks sued the Seaboard Ail Line Railway Company and The Pullman Company jointly for damages from injuries sustained while traveling in a chair car belonging to The Pullman Company and operated by the Seaboard Air Line Railway Company.

Just before reaching her destination, the plaintiff left her seat in the chair car and proceeded towards the dressing room preparatory to getting off the train, and as she proceeded down the narrow aisle between the drawing room and the side of the car, she caught her foot under an iron pipe and fell and sustained serious injuries to her hip.

The declaration contains two counts; the first charging that the injury was caused by the careless and negligent operation of the train by the Seaboard Air Line Railway; the second, that the injury was sustained by being "thrown down with great force and violence by an obstruction, to-wit, an iron pipe, then and there placed alongside of and in said aisle, said iron pipe being part of the construction of said car."

We will not discuss the assignments of error relating to the first count, as the court instructed the jury that the evidence did not support it and it was withdrawn from their consideration.

The first assignment of error relates to the overruling of a demurrer to the second count. The declaration charges carelessness and negligence in permitting an obstruction, to-wit, an iron pipe to be in the aisle, whereby she was injured.

We think this allegation sufficient, and there was no error in overruling the demurrer.

The second assignment relates to sustaining the demurrer to the second, third and fourth pleas filed by The Pullman Company. Without passing upon the correctness of this ruling, The Pullman Company was not injured thereby, as it was permitted to prove everything that it could have proven under these pleas.

The seventh assignment of error relates to the refusal of the court to grant a continuance for the term because of an amendment made to the declaration when the case was called for trial.

The declaration alleged that the plaintiff's "left hip was bruised and broken, and will so remain, to-wit, permanently."

The amendment added "and by reason thereof plaintiff has suffered, does suffer, and will continue to suffer, to-wit, permanently, great pain and anguish."

We do not consider that this was such an amendment as required a continuance.

From the allegations in the declaration, that the plaintiff's "hip was bruised and broken and will so remain permanently," it is palpable that she suffered. Past, present and continued suffering, seem to be natural consequences of these allegations, and the amendment was not such a matter as could have surprised the defendants or required any extended time to prepare to meet it.

The eighth, ninth and tenth assignments of error involve the competency of R. L. Harper, S. W. Poston and O. G. Matthews to sit as jurors in the trial of the cause.

At the time of the trial these jurors were on a strike against the Seaboard Air Line Railway Company, and that members of the same shop-craft to which these jurors belonged, worked for The Pullman Company, the other defendant.

The mental attitude of employers and employees towards each other during a strike or lockout, is not such as to be conducive to fairmindedness and lack of bias or prejudice.

These strikers had a grievance—a just one perhaps— against the defendants, and this grievance would naturally make their mental attitude towards them one of hostility. They may not have been conscious of it; they may have thought they could give the objects of their grievance a fair and impartial trial, but we do not think they could, with an unbiased mind, pass upon the merits of a controversy in which the Seaboard Air Line Railway was a party; or that they could have been absolutely impartial in their judgments.

The challenges for cause were improperly overruled.

The eleventh assignment of errors is predicated upon the ruling of the court that the defendants had but three peremptory challenges, jointly.

It appears from the record that after the court denied the challenges of Harper and Poston for cause they were challenged peremptorily. Thereupon "Mr. A. H. King of counsel for plaintiff made inquiry of the court as to the number of peremptory challenges the defendants would have under the law." The court ruled that "there would be three challenges allowed the defendants jointly, and not three each." To this ruling the defendants excepted.

Whereupon the following occurred:

"Mr. Hartridge. I will ask your Honor if, on your Honor's ruling, and we have had three challenges, whether I would have a right to make a peremptory challenge upon the part of The Pullman Co.?"

"The Court. My view of the law is, in a case of this kind, the parties defendant are only entitled to three challenges, Mr. Hartridge. I made some quick references to the Encyclopedia of Pleading and Practice, and that seems to be the general construction, except in such cases as where the defenses of the several defendants are clearly antagonistic, and then they are entitled to three challenges each, in this case it does not seem to come within that rule."

"Mr. Hartridge. Your Honor's ruling is, I would not have the right to make the peremptory challenge?"

"The Court. My ruling is that the defendants have exhausted their peremptory challenges. I note an exception to that ruling."

"Mr. Hartridge. I wanted to get into the record clearly, if your Honor please, under the ruling, that I desire to make a peremptory challenge, and that your Honor's ruling was that I had no right to make it." ·

"The·Court. Yes, sir, I understand that. Exception is noted for the defendants.

"And thereupon the court did rule and decide that the peremptory challenge for cause should not be allowed, to which ruling and decision of the court the defendants did then and there, each of them, except, on the grounds:

"1. That each of said defendants had, under the law, three challenges, severally, and that only three peremptory challenges had at that time been used.'

The ruling of the court on the number of peremptory challenges to which the two defendants were entitled under the law, was erroneous.

The defenses of the two defendants were separate.

To the extent of showing that the plaintiff sustained no injury, or if she did, it was the result of her own negligence, the defendants had a common interest. But if it were proven that she sustained injury without any contributing negligence on her part, their interests became to

a certain degree antagonistic. It is true that subsequently the court instructed the jury that there was no testimony to warrant them in finding that the plaintiff was injured by the negligent operation of the train, and withdrawing the first count from their consideration; leaving before them the issue of whether or not the parlor car, Robin, in which the plaintiff was riding, was such a safe place as it was the duty of the defendants to provide for the transportation of passengers. But this aspect of the case was not present when the court ruled that the defendants were not each entitled to three peremptory challenges.

Under the issues presented by the pleadings, the defendants were each entitled to three peremptory challenges, and it was error for the court to deny their right to exercise them.

The twenty-second assignment relates to the ruling of the court, permitting the plaintiff to prove over the objection of the defendants that subsequent to the accident, a shield was placed over the pipe under which the plaintiff said her foot was caught, and caused her to be thrown down and injured.

The rule laid down by Mr. Wigmore is: "Accordingly, it is conceded by almost all courts, that no act in the nature of repairs, improvements, substitution, or the like, done after the occurrence of an injury, is receivable as evidence of a consciousness, on the part of the owner, of negligence, connivance, or other culpability in causing the injury." 1 Wigmore on Evidence (2nd ed.) p. 582.

The courts of this country, with great unanimity, adhere to this rule. In Terre Haute & I. R. Co. v. Clem, 123 Ind. 15, 23 N. E. Rep. 965, the court said: "To declare the evidence competent is to offer an inducement to omit the use of such care as the new information may suggest, and to deter persons from doing what the new experience informs them may be done to prevent the possibility of future ac-

cidents. The effect of declaring such evidence competent is to inform a defendant that if he makes changes or repairs he does it under penalty; for, if the evidence is competent, it operates as a confession that he was guilty of a prior wrong. * * * It is unjustly reversing the presumptions to hold that such an owner improves, or repairs, because he was, at some time anterior to the time of making the improvements or repairs, guilty of an actionable wrong. True policy and sound reason require that men should be encouraged to improve, or repair, and not to be deterred from it by the fear that if they do so their acts will be construed into an admission that they had been wrongdoers. A rule which so operates as to deter men from profiting by experience and availing themselves of new information has nothing to commend it, for it is neither expedient nor just.''

In the case of Morse v. Minn. & St. L. Ry. Co., 30 Minn. 465,, 16 N. W. Rep. 358, the court said: ''A person may have exercised all the care which the law required, and yet, in the light of his new experience, after an unexpected accident has occurred, and as a measure of extreme caution, he may adopt additional safeguards. The more careful a person is, the more regard he has for the lives of others, the more likely he would be to do so, and it would seem unjust that he could not do so without being liable to have such acts construed as an admission of prior negligence. We think such a rule puts an unfair interpretation upon human conduct, and virtually holds out an inducement for continued negligence.'' See also Columbia R. R. Co. v. Hawthorne, 144 U. S. 202, 36 L. Ed. 405.

It is true that when the court charged the jury, he told them that the fact that a covering of some kind was subsequently put over the pipe, must not be construed or taken by them as indicating or implying that the pipes as they

were at the time of the accident, made the aisle or way unsafe for passengers to walk down, nor be construed or taken by them as implying, or as an admission by The Pullman Company that the pipes as they were at the time of the fall of Mrs. Parks, were a menace to or prevented passengers from walking safely down the aisle or way of the car. But at the time when the jurors' minds were in a receptive mood and the evidence was painting the picture that their verdict would reflect, he allowed this testimony to go to them, and by overruling the objections of the defendants, gave it his sanction and approval.

His charge could not remove the impression created by the fact that these repairs had been made, nor prevent the jury from drawing the natural inference in their minds unlearned in the law, that the fact that such repairs had been made, was an admission by The Pullman Company that the pipes were improperly placed, and were unsafe, without a shield or some other protection over them.

In this case the court did not strike the testimony at the time it was given, nor was it inadvertently placed before the jury; but it went to them over the objections of counsel and with the stamp of the court's approval, by overruling the objections.

We think this was harmful error, and was not cured by the instruction of the court in its general charge not to consider it.

For the errors indicated, the judgment is reversed.

WEST, C. J., AND ELLIS, TERRELL AND STRUM, J. J., concur.

WHITFIELD, J., dissents.