160 So.2d 535 (1964)
CITY OF NICEVILLE, Appellant,
v.
Erma Louise HARDY, Appellee.
No. E-93.
District Court of Appeal of Florida. First District.
January 30, 1964.
Rehearing Denied February 25, 1964.
*536 Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellant.
Campbell & Andrews, DeFuniak Springs, for appellee.
CARROLL, DONALD K., J.
The defendant, a municipal corporation, in a negligence action has appealed from a final judgment entered by the Circuit Court for Okaloosa County, based upon a jury verdict.
This action is for damages for injuries sustained by the plaintiff when she fell into a water meter box owned and maintained by the defendant and located on private property. The points raised by the defendant in this appeal are: whether a municipality owes the duty of ordinary care to a licensee or trespasser who is so injured; whether plaintiff's counsel may inject in a trial the matter of insurance coverage by *537 asking prospective jurors whether they are employed by an insurance company, without first asking their occupations; and whether a plaintiff may introduce evidence of changes made by the defendant after an injury in an attempt to show negligence.
In more detail, the facts established by the evidence at the trial are: on the afternoon of December 5, 1960, at about dusk, the plaintiff, while walking in an unpaved area between the edge of a street and a store in the defendant city, stepped on the lid of a water meter box owned and maintained by the defendant. Her foot slid into the meter box, the lid "came back up" and cut her foot, and she fell to the ground. In this immediate vicinity three water meter boxes were located, and they were near the corner of the porch of a two-story concrete block building, housing a post office and a variety store. The meter box farthest away from the porch was the box she tripped over. It was located on property adjacent to the plot on which the store building stood. The identity of the owner of the land on which the said meter box was located is not shown in this record. As the plaintiff points out in her appellate brief, there was also evidence that the meter box in question had, due to soil erosion, become unearthed and tilted on the side, so the lid would not stay on the box; that the public walked over and near the three meters in approaching a business establishment when crossing the street; that the defendant had been repeatedly warned of the hazard created by the dangerous condition of the meter boxes and had, for months before the incident in question, promised to do something about it; that the meter box upon which the plaintiff stepped trapped her foot for about 45 minutes before she could be freed; and that the said meters were not open to ordinary observation due to the fact that grass had grown up around them.
The plaintiff's theory of recovery, as revealed in her pleadings and appellate brief, is that the defendant was charged with the duty to maintain the meter boxes, that the dangerous and defective condition of the meters constituted a hazard and trap had been made known to the defendant, which acknowledged such fact with a promise to correct the condition long before the plaintiff was injured; and that the defendant not only failed to remedy the condition, but also made no effort to warn the public of the danger. We think that this theory of recovery is sound under the circumstances shown in this record.
The second point raised by the defendant on this appeal is always difficult for trial and appellate courts to resolve  whether the injection of the idea of insurance during the jury trial in an action for damages was such as to raise a presumption that the jury was unduly influenced or prejudiced thereby. This problem is compounded by the fact that any diligent researcher can compile an impressive list of decisions in the reported cases in apparent support of either position on this question. This is so probably because each decision depends upon the particular circumstances of that case, not only the precise setting in which the insurance idea was injected but also the verdict reached by the jury measured in the light of the evidence and the court's instructions.
In the case at bar in his voir dire examination of the prospective jurors, before asking their specific occupations, the plaintiff's counsel asked "Do any of you gentlemen work for or are you employed by any type of insurance company." One of the prospective jurors responded that he was employed as an insurance agent. In answer to the counsel's follow-up question "For an accident or casualty company?" the said juror stated "Casualty, accident, liability." This line of inquiry was not pursued further. At the conclusion of the voir dire examination, the defense counsel moved the trial court to declare a mistrial on the ground that the said insurance question was improper, having been asked "without asking anyone what their occupation was * * *." The trial court denied the motion.
*538 In our opinion, if the attorney for a plaintiff in an action for damages has reason to believe that a certain insurance company has issued a liability policy to the defendant and is liable to pay all or part of the damages that may be determined in the case, it seems only fair to permit the plaintiff's attorney to ascertain in his voir dire examination whether they are officers or employees of the said company. Ordinarily, we think, this information can be readily obtained by asking prospective jurors what their occupations are, as well as the identity of their employers. If such counsel bypasses this normal procedure and himself injects the idea of insurance into the proceedings before the jury, he runs the risk of seeing his client's judgment nullified by the trial or appellate court either on the ground that such injection was per se prejudicial or on the ground that such injection, while not per se prejudicial, may have been the source of the improper influence that apparently led to a questionable verdict.
To paraphrase what we said in Pensacola Transit Co. v. Denton, Fla.App., 119 So.2d 296 (1960): The injection of an improper influence into trial proceedings makes the task of an appellate court an almost impossible one. No person on earth can tell with certainty the full effect of that influence upon a juror's mind. The injection of an improper consideration or influence into proceedings, particularly those in which jurors are the determiners of the facts, may raise a problem that available procedures cannot always resolve. At best, it places an unfair burden upon the opposing party. If the latter fails to object, he may waive his objection; if he makes an objection and even if the court sustains it, no one can be sure that the said consideration or influence has actually been obliterated from each juror's mind.
The ultimate goal of our court system to attain truth and justice demands unremitting vigilance and dedication on the part of both bench and bar to keep every improper influence out of all legal proceedings.
Nevertheless, considering the entire record of the trial in the case on review, we cannot conclude that the trial court committed harmful error in denying the defendant's motion for a mistrial grounded upon the reference to insurance during the voir dire examination. We cannot say from the record that the idea of insurance was unduly stressed or that the reference had a prejudicial effect on the jurors' minds. However, our holding must not be taken as being in any sense an approval of such interrogations, for all courts frown upon any practice that may inject into a jury trial an improper influence, and any attorney who, in his zeal for his client's cause, engages in such a practice does so at his client's risk.
The appellant-defendant's third point on appeal, we think, is well taken  namely, that the trial court erred in admitting into evidence, over the defendant's objection, testimony that the defendant made changes in the meter boxes after the plaintiff was injured.
The testimony in question is that of one Donald Neal, a witness for the defendant. On direct examination he testified that on the date on which the plaintiff was injured (December 5, 1960), he was employed by the defendant city and was in charge of its Sewer and Water Department. He testified that he was familiar with "the meters that are in controversy in this case." In answer to the defense attorney's question whether "the water meters, themselves" had been moved at any time "from the area where they were when you worked for the City," Neal said, "Not since they were installed." The word "boxes" was not mentioned during the direct examination.
In the first question propounded to Neal on cross-examination, the plaintiff's counsel said that he wanted to assume that the witness answered the defense attorney's question "as far as it goes. The meters have not been moved * * * but these meter boxes were moved. * * *" At this point the defense attorney objected on the ground that there was no direct testimony *539 about "meter boxes," that the "question was about meters." In overruling this objection, the trial court declared that the defense attorney "left the gate open. I think he can answer that question." The counsel for the plaintiff then asked Neal several questions about the meters and the meter boxes, including a question whether the meter boxes had been moved. The defense attorney's objection to this last question was overruled by the trial court. Neal then answered the last question by saying that at the present time "they have concrete meter boxes." Pursuing this line of inquiry, the plaintiff's counsel asked further questions concerning the changing of the meter boxes, and Neal testified that he "heard about the accident happening that night and I authorized the boys who worked under me to change them the next day." An objection to this line of inquiry was made by the defense counsel on the ground that "changes made after the occurrence are immaterial." Again, this objection was overruled by the trial court. Neal further testified on cross-examination that no superior told him to change the meter boxes, and he did not discuss the matter with any members of the city council or the mayor; that on the date of the plaintiff's accident the meter boxes in question were made of cast iron, but they were later changed to concrete boxes, which he said were safer.
In all, approximately 80 questions were asked and answered during Neal's cross-examination relative to the change of the meter boxes following the accident that befell the plaintiff. Almost the entire cross-examination of Neal was devoted to this subject.
The general rule recognized in this state and in nearly all jurisdictions is that evidence of a change in conditions or proof of repairs made after an injury is never admissible as proof of the defendant's negligence in not having made the repairs or taken precautions prior to the accident. Some courts have recognized exceptions to this general rule, but those exceptions are not pertinent in our present consideration. The decisions recognizing the general rule and its exceptions are collated in comprehensive annotations in 170 A.L.R. 7 and 64 A.L.R.2d 1296.
As pointed out in these annotations, the reasons underlying the mentioned general rule, excluding evidence of repairs made after injury as proof of negligence, have been variously stated by the courts recognizing the rule. Some courts exclude such evidence on the theory that it is immaterial and irrelevant, while others take the position that such evidence should be excluded as a matter of policy, since such subsequent repairs, alterations, or precautions are to be encouraged in order to prevent future accidents, and, if such improvements could be introduced in evidence against the person making them as proof of his prior negligence, he would be discouraged from improving the place or thing that caused the injury. The Supreme Court of Florida aligned itself with the courts taking the latter view in City of Miami Beach v. Wolfe, Fla.App., 83 So.2d 774 (1955). In that case a pedestrian had brought an action against the City of Miami Beach for injuries sustained when she stepped into a depression in a sidewalk and fell. During the trial testimony was admitted showing repairs to the sidewalk after the injury occurred. The defendant city's attorney objected to this testimony, but the trial court overruled his objection, apparently for the reason that he had taken the position in his opening statement that no depression in the sidewalk existed. In discussing this subject the Supreme Court referred to:
"* * * our decision in Seaboard Air Line Ry. Co. v. Parks, 89 Fla. 405, 104 So. 587, 588, that evidence of repairs or improvements made after an injury is not admissible to show a `consciousness on the part of the owner, of negligence, connivance, or other culpability in causing the injury.' In this holding we adopted the majority view and approved the reason frequently given for the rule, namely, if such evidence could *540 be received against a defendant he would be penalized for an attempt to prevent injury to others. There seems to be no need now to elaborate on either the rule or the reason for it because the appellee concedes `that evidence of repairs is inadmissible to show negligence.' We must decide only whether or not the circumstances in the instant case create an exception which we should recognize and apply.
* * * * * *
"We are convinced that the very purpose of the rule we announced thirty years ago would be defeated were we to agree that the testimony of repairs was properly admitted. We think the ruling was erroneous and that the error was not cured by the charge that `The fact  if it is a fact  that the Defendant-City caused repairs to be made to or at the place where the Plaintiff allegedly fell, after the time of such alleged fall, is not to be considered as an admission that a defective and dangerous condition existed at such place at the time of the accident."
The Supreme Court then reversed the judgment appealed from that had been entered against the defendant, and remanded the cause for a new trial.
In keeping with the foregoing decision, as well as the decisions from nearly every jurisdiction in which the question has been considered, we hold that in the case on review the trial court erred in admitting, over the defendant's objections, the testimony of the witness Neal concerning the defendant's changing of the meter boxes after the plaintiff was injured. That testimony, we think, does not fall within any of the recognized exceptions to the general rule excluding such evidence. We cannot agree with the trial court's view that the defense attorney had "left the gate open" to this line of inquiry in his direct examination of the witness Neal. A reading of the transcript of the direct examination reveals that meter boxes were not mentioned therein, although meters were. This is not a mere matter of semantics, for the heart of the plaintiff's claim of negligence was that it was a defective meter box that caused the plaintiff's injuries.
Under these and other circumstances shown in the record we are of the opinion that the jury likely grounded its finding of the defendant's negligence largely upon the questioned testimony of Neal. Admitting such testimony over objections founded upon the established exclusionary rule discussed above, constituted, we think, a harmful, reversible error.
The judgment appealed from is, therefore, reversed and the cause is remanded with directions for a new trial in harmony with the views herein expressed.
STURGIS, C.J., and RAWLS, J., concur.