430 So.2d 915 (1983)
WHITE CONSTRUCTION COMPANY, INC. and Limerock Industries, Inc., Appellants,
v.
Nathaniel DUPONT and Janey B. Dupont, His Wife, Appellees.
No. AE-294.
District Court of Appeal of Florida, First District.
April 12, 1983.
Rehearing Denied May 27, 1983.
Dominic M. Caparello, H. Michael Madsen and Anne Longman of Messer, Rhodes, Vickers, Tallahassee, for appellants.
W. Dexter Douglass and Michael F. Coppins of Douglass, Davey, Cooper & Coppins, Tallahassee, for appellees.
ERVIN, Judge.
Appellants, White Construction Company, Inc. (White) and Limerock Industries, Inc. (Limerock) appeal a jury verdict awarding $5,550,000.00 in compensatory and punitive damages to appellees, Nathaniel and Janey Dupont, in an action for personal injuries and loss of consortium. Of the five points raised on appeal, we find merit only with point two, challenging the award of $1,025,000.00 to Janey Dupont, Nathaniel's wife, for loss of consortium as excessive. We therefore affirm without discussion points one, three, four and five and reverse as to point two only.[1]
*916 The record discloses that Nathaniel Dupont, a 55-year old independent truck owner/operator, arrived at Limerock's mine on September 13, 1977 to pick up a load of rock. Dupont parked his four-axle tractor-trailer, with the motor running, to wait his turn for loading, and he stepped out of the cab and went between the trailer and the cab for the purpose of cleaning the cab. A Limerock employee, driving a CAT 988 loader, weighing some forty tons and standing approximately 22 feet high, proceeded to back the loader around a large pile of limerock toward Dupont's trailer. As the loader, proceeding at top speed, approached Dupont's trailer, the driver looked back, and, realizing he was going to hit the trailer, shouted a warning to Dupont. The loader struck the back end of the trailer and the impact apparently caused its gear to pop into forward position, forcing the trailer to advance about one and half times its length, and in the process to roll over Dupont, who in turn suffered permanent disability as a result of his injuries.
Dupont brought an action against Limerock, the corporation that owns the mine, and White, the corporation that owns the loader which was then leased to Limerock,[2] seeking compensatory and punitive damages for his personal injuries. Janey Dupont joined in the action, seeking damages for her loss of consortium. The jury returned a verdict in favor of the Duponts for the following damages: $1,025,000.00 in compensatory damages to Nathaniel Dupont, $1,025,000.00 in damages to Janey Dupont for loss of consortium, $2,000,000.00 in punitive damages against Limerock,[3] and $1,500,000.00 in punitive damages against White.
Appellants contend that the award of $1,025,000.00 for loss of consortium must be reversed as excessive because the jury could only have arrived at that figure through motivations of passion or prejudice, or because the award amounts to a double recovery of damages properly awarded to Mr. Dupont. Although we find nothing in the record substantiating the former argument, we find that the record supports appellants' claim of double recovery, requiring that the award be reversed. In reaching this conclusion, we are aware of the general rule regarding review of a damage award by an appellate court:
The test to be applied in determining the adequacy of a verdict is whether a jury of reasonable men could have returned that verdict. This test is simply stated but may be difficult to apply in a particular case. We are aware of the difficulties and frustrations courts experience in the search for the mythical jury of reasonable men. The appellate court must be ever alert against the temptation to substitute its "verdict" for that of the jury.
Straker v. Lynch, 335 So.2d 356, 357 (Fla. 1st DCA 1976) (citing Griffis v. Hill, 230 So.2d 143, 145 (Fla. 1969)). We further recognize that, as in this case, the "correctness of the jury's verdict is strengthened when the trial judge refuses to grant a new trial or a remittitur." Lassitter v. International Union of Operating Engineers, 349 So.2d 622, 627 (Fla. 1976). "On the other hand, we must not refuse to act to relieve the injustice of either a grossly inadequate or excessive verdict." Straker, 335 So.2d at 357.
Before 1971 a wife could not maintain an action for loss of consortium in Florida when her husband was injured due to the negligent or intentional acts of another. In Gates v. Foley, 247 So.2d 40 (Fla. 1971), the Florida Supreme Court, rejecting precedent *917 and the common law rule,[4] elected to follow the trend in other jurisdictions by recognizing that a wife is entitled to recover for loss of consortium in the same manner as her husband if she were injured. See also Scudder v. Seaboard Coast Line Railroad, 247 So.2d 46 (Fla. 1971); Resmondo v. International Builders of Florida, Inc., 265 So.2d 72 (Fla. 1st DCA 1972); Ryter v. Brennan, 291 So.2d 55 (Fla. 1st DCA 1974).
An action for loss of consortium is, of course, a derivative action and the jury must first find that the husband has sustained compensable injuries at the hands of another before the wife's action may be considered. If that threshold is met, the wife must then "present competent testimony concerning the impact which the accident had on the marital relationship and, more specifically, evidence concerning her loss of consortium." Albritton v. State Farm Mutual Automobile Insurance Company, 382 So.2d 1267, 1268 (Fla. 2d DCA 1980). Upon such a showing, the wife is thus entitled to, at the very minimum, nominal damages. Id. at 1269. See also, Shaw v. Peterson, 376 So.2d 433 (Fla. 1st DCA 1979).
We are not confronted with a situation in which only nominal damages were awarded, but rather with an award which appellants contend is excessive and amounts to a double recovery. In Florida, because the types of losses which the spouse may recover have not been clearly defined, the potential danger of a double recovery is always lurking.[5] One commentator has observed that "[t]he concept of `consortium' embraces two contrasting types of elements. The tangible elements include support and services provided by the other spouse, while intangible elements encompass such items as love, companionship, affection, society, sexual relations, comfort, and solace." Annotation, 74 ALR3d 805, 809 (1976) (e.s.). In Florida, there is no question that recovery may be had for the intangible elements of loss of consortium, which, as defined by Gates, consist of
the companionship and fellowship of husband and wife and the right of each to the company, cooperation and aid of the other in every conjugal relation. Consortium means much more than mere sexual relation and consists, also, of that affection, solace, comfort, companionship, conjugal life, fellowship, society and assistance so necessary to a successful marriage.
247 So.2d at 43 (citing Lithgow v. Hamilton, 69 So.2d 776, 778 (Fla. 1954)). Contrasted against these elements, Gates forbids, however, recovery by the wife for the tangible loss of "support or earnings which the husband might recover in his own right." 247 So.2d at 43. The law of consortium in Florida is less clear as to the wife's right to *918 recover for "services" which the husband is no longer able to perform.
In an earlier decision addressing the issue of what services the jury may consider in an action for wrongful death and loss of consortium brought by a husband after the death of his wife, it was held that the composition of this element includes the
pecuniary value of services which the husband might reasonably expect to have received from the deceased wife if she had not been killed, less maintenance costs, of course; this includes the value of such services as the wife was accustomed to perform in the household and which will have to be replaced by hiring services; services ordinarily performed by the deceased wife in the care and moral training of the minor children in the household; and any special service which the wife was accustomed to perform for the husband in the household, and in his business without compensation, which will have to be replaced by hired services.
Lithgow v. Hamilton, 69 So.2d 776, 778 (Fla. 1954). Because the plaintiff in Lithgow was able to substantiate the actual cost of obtaining the services of a "combination housekeeper-governess-counsellor", the award of damages, including those for loss of services, was affirmed. Id. at 780.
The necessity of proving the amount of pecuniary damages attributable to the loss of a spouse's services was emphasized more recently by the Second District Court of Appeal in Rumsey v. Manning, 335 So.2d 25 (Fla. 2d DCA 1976), wherein the wife sought to recover for loss of consortium, including the loss to the wife of the husband's services in her beekeeping business. Relying on Lithgow, the court concluded that "[s]o long as there is no double recovery, we see no impediment to the recovery of the reasonable value of services customarily performed without compensation by one spouse in the other's business which are lost by reason of injuries suffered in an accident caused by a third party." 335 So.2d at 26 (e.s.). In Rumsey, however, the danger of double recovery was significantly reduced because the husband withdrew his claims for loss of earnings and loss of earning capacity prior to trial. Nevertheless, the award of $60,000.00 for loss of consortium was reversed and remanded for a new trial because the wife had failed to present competent and relevant evidence substantiating the reasonable value of the husband's services.
In this case we also find that there was insufficient evidence to justify the $1,025,000.00 award for loss of consortium. Although Mrs. Dupont has undoubtedly suffered a loss of the intangible elements of consortium as defined in Gates, that loss alone cannot explain or justify an award of this magnitude.[6] Nor can the award be sustained on the theory of loss of services, since the only evidence to support such loss consists of Mrs. Dupont's statement that her husband was no longer able to help her *919 with routine household chores. Because no evidence was presented as to the reasonable value of such services or to show that it was necessary to hire someone else to perform such services, the award may not be justified on the basis of such unsubstantiated, non-pecuniary loss.
Our review of the record causes us to conclude that the jury's award does in fact amount to a double recovery of the sums included in the jury's verdict of damages to the husband. Mrs. Dupont was allowed to testify at length concerning financial losses incurred by her husband's trucking business since the accident and the fact that she had been forced to take a more active role in the operation of that business as a result of her husband's injuries. Because any losses relating to the business were properly recoverable by Mr. Dupont, his wife's testimony as to such losses could only have served to confuse the jury as to the proper measure of damages in considering her claim for loss of consortium. Because we find insufficient evidence in the record to support the award of $1,025,000.00 for loss of consortium, we reverse the trial court's judgment as to that award only.
Accordingly, we REVERSE in part, AFFIRM in part, and REMAND this cause for purposes of a new trial on the issue only of Mrs. Dupont's damages for loss of consortium.
MILLS and SHIVERS, JJ., concur.
NOTES
[1] We find no merit, and therefore do not address, the remaining points raised by appellants which include: that the trial court erred in entering judgment for punitive damages, in not dismissing the complaint for improper venue, in admitting evidence of subsequent repairs to the CAT 988; and in denying a motion for new trial on the ground that inflammatory remarks by defense counsel during closing arguments improperly influenced the jury and resulted in an excessive and judicially shocking award.
[2] Both Limerock and White are closely held Florida corporations with a common majority stockholder, Luther White.
[3] Appellants requested, in post-trial motions, that the court order a remittitur as to all damages awarded by the jury. The court granted a remittitur of $1,000,000.00 only as to the punitive damage award against Limerock. Appellees agreed to the remittitur but then sought to challenge it by cross-appeal. This court granted appellants' motion to dismiss the cross-appeal in White Construction Company, Inc. v. Dupont, 423 So.2d 549 (Fla. 1st DCA 1982).
[4] In Gates, the Florida Supreme Court expressly receded from its prior decision of Ripley v. Ewell, 61 So.2d 420 (Fla. 1952), wherein that court had refused to recognize the right of a wife to recover for loss of consortium.
[5] We note that the most common method employed to guard against double recovery is the jury instruction. In Gates it was stated that

the trial court should carefully caution the jury that any loss to the wife of her husband's material support is fully compensated by any award to him for impairment of his lost earning and that the wife is entitled to recover only for loss of consortium as defined in this opinion.
247 So.2d at 45. Similarly, it has been held that double recovery may only be avoided by "delineating accurately the items properly includable in the husband's damages and by permitting the wife in her separate action to recover for the loss of only those elements of consortium which, under the facts of a particular case, represent separate and distinct losses to her." Novak v. Kansas City Transit, Inc., 365 S.W.2d 539, 544 (Mo. 1963) (e.s.). Although the jury instruction given in this case followed the model instruction, see Florida Standard Jury Instruction (Civ.) 6.2(e), that instruction was, in this case, insufficient to clarify the limited types of damages which the wife could recover, particularly in light of the fact that the wife testified extensively as to damages recoverable by the husband alone. We believe that the danger of double recovery may be eliminated in this case if, on remand, the jury is instructed that, as suggested in Gates, a wife may not recover for any loss to her of her husband's material support or for his loss of earnings or earning capacity and, further, that she may only recover for those losses, as stated in Novak, which are "separate and distinct losses to her."
[6] Although we agree with the statement that "[t]he fact that an award may set a precedent by its size does not in and of itself render it suspect", Rodriguez v. McDonnell Douglas Corporation, 87 Cal. App.3d 626, 654-655, 151 Cal. Rptr. 399, 414 (1978), our research has failed to produce a single case in which a wife has recovered damages even approaching $1,025,000.00 for loss of consortium, even in the most grievous of circumstances. In Rodriguez, for example, an award of $500,000.00 was affirmed where the husband was awarded in excess of $4,000,000.00 after an industrial accident left him totally paralyzed from the chest down. Likewise, in General Electric Co. v. Bush, 498 P.2d 366, 88 Nev. 360 (1972), the wife was awarded $500,000.00, and the husband in excess of $3,000,000.00, after a mining accident left him, in the words of the court, "among the living dead". Id. at 368. The only similar Florida case is City of Tamarac v. Garchar, 398 So.2d 889 (Fla. 4th DCA 1981), in which the husband was rendered a quadraplegic following an automobile accident. Although the jury awarded the husband $4,200,000.00 and the wife $525,000.00 for her loss of consortium, the precedential value of the case was diminished by the fact that the Fourth District reversed for a new trial on the issue of liability. Although we do not question the seriousness of Mr. Dupont's injuries, nor the impact they have had on the Duponts' marital relationship, it is obvious that his circumstances do not begin to approach those in Rodriguez, Garchar and Bush. Neither does Mrs. Dupont's loss compare with the loss in those cases resulting in the foreclosure of any semblence of a normal relationship.