455 So.2d 1026 (1984)
WHITE CONSTRUCTION CO., INC.; and Limerock Industries, Inc., Petitioners,
v.
Nathaniel DUPONT and Janey B. Dupont, His Wife, Respondents.
No. 63,777.
Supreme Court of Florida.
July 26, 1984.
Rehearing Denied October 11, 1984.
*1027 John S. Rawls, Tallahassee, and Dominic M. Caparello, H. Michael Madsen and Anne Longman of Messer, Rhodes & Vickers, Tallahassee, for petitioners.
W. Dexter Douglass and Michael F. Coppins of Douglass, Davey, Cooper & Coppins, Tallahassee, for respondents.
ADKINS, Justice.
We have before us a decision of the First District Court of Appeal, White Construction Co. v. Dupont, 430 So.2d 915 (Fla. 1st DCA 1983), which allegedly conflicts with prior decisions of this Court and of the district courts of appeal on the same point of law. We find conflict with City of Miami Beach v. Wolfe, 83 So.2d 774 (Fla. 1955), thus we have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution.
This case involves an accident at a mining site. On September 13, 1977, the respondent, Nathaniel Dupont, an independent truck owner and operator, arrived at the Cabbage Grove mine owned by petitioner, Limerock Industries, Inc., to pick up a load of limerock. While he was waiting for his turn to load, Dupont left his four axle tractor-trailer with the motor running, walked between the cab and the trailer, and began to do some minor repair work to the truck. A Limerock employee, driving a CAT 988 loader, weighing some forty tons and standing approximately 22 feet high, began to back the loader around a large pile of limerock toward Dupont's trailer. As the loader, proceeding at top speed, approached Dupont's trailer, the driver looked back, and, realizing he was going to hit the trailer, shouted a warning to Dupont. The loader struck the back end of the trailer and the impact apparently caused its gear to pop into forward position, forcing the trailer to advance about one and a half times its length, and in the process to roll over Dupont, who suffered permanent disability as a result of his injuries.
Dupont sued Limerock Industries, Inc., the corporation that owned the mine, and White Construction Co., the company that owned the loader, which was, at that time, leased to Limerock, seeking compensatory and punitive damages for his personal injuries. Dupont's wife, Janey Dupont, joined in the action, seeking damages for loss of consortium. The jury returned a verdict for the Duponts, awarding the following *1028 amounts of damages: $1,025,000 in compensatory damages to Nathaniel Dupont, $1,025,000 to Janey Dupont for loss of consortium, $2,000,000 in punitive damages against Limerock, and $1,500,000 in punitive damages against White. The trial court granted petitioner, Limerock's, motion for new trial on the issue of punitive damages, subject to an alternate order of remittitur reducing the award from $2,000,000 to $1,000,000. Petitioners initially accepted the order of remittitur, but then sought to challenge it by cross-appeal. The district court dismissed the cross-appeal, thereby affirming the order of remittitur, in a prior decision not involved in this appeal. White Construction Co. v. Dupont, 423 So.2d 549 (Fla. 1st DCA 1982).
Petitioners raised the following points on appeal to the First District Court of Appeal in the case which we have for review: that the trial court erred 1) in entering judgment for punitive damages; 2) in not dismissing the complaint for improper venue; 3) in admitting evidence of subsequent repairs to the loader; 4) in denying a motion for new trial on the ground that inflammatory remarks by respondents' counsel during closing arguments improperly influenced the jury and resulted in an excessive and judicially shocking award; and 5) in not reducing the award of $1,025,000 to Janey Dupont for loss of consortium as excessive. The district court affirmed all aspects of the judgment without discussion except for the $1,025,000 award for loss of consortium to Janey Dupont, which they reversed and remanded for a new trial. White Construction Co., 430 So.2d 915.
The evidence in this case showed that the loader's brakes had not been working for some time, and that the petitioners were aware of this fact. Although this evidence would be sufficient to show that the petitioners were negligent, it is not sufficient, as a matter of law, to submit the issue of punitive damages to the jury. This Court has previously stated the degree of negligence necessary to support an award of punitive damages in a civil case in Carraway v. Revell, 116 So.2d 16 (Fla. 1959).
Carraway was an action for compensatory damages arising under Florida's automobile guest statute. The imposition of punitive damages was not at issue. Consequently, the language there concerning punitive damages could appropriately be termed dicta. However, it has been followed by the district courts. See, e.g., Martin (Government Employees Insurance Co.) v. Young, 443 So.2d 293 (Fla. 3d DCA 1983); Ellis v. Golconda Corp., 352 So.2d 1221 (Fla. 1st DCA 1977), cert. denied, 365 So.2d 714 (Fla. 1978); Carter v. Lake Wales Hospital Association, 213 So.2d 898 (Fla. 2d DCA 1968).
In Carraway we made it clear that something more than gross negligence is needed to justify the imposition of punitive damages:
[G]ross negligence ... is that kind or degree of negligence which lies in the area between ordinary negligence and wilful and wanton misconduct sufficient to support a judgment for exemplary or punitive damages... .
116 So.2d at 22. This Court agreed with the district court "`that the character of negligence necessary to sustain a conviction for manslaughter is the same as that required to sustain a recovery for punitive damages.'" Id. at 20. We then stated:
There is a real affinity between the character (or kind or degree) of negligence necessary to recover punitive damages or to sustain or warrant a conviction of manslaughter. Both have, as a basic purpose, the punishment of the offender. The offender in a manslaughter action may be deprived of his liberty or property by the State while the offender in an action for that kind of negligence justifying the imposition of punitive damages is deprived of his property  not as compensation to the injured party but as punishment  ergo, both are punishment and partake of public wrongs, to a greater or less degree.
Id. (footnotes omitted).
In a footnote, we set forth the standard to be met to justify the imposition of punitive damages upon a defendant:

*1029 The character of negligence necessary to sustain an award of punitive damages must be of a "gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them".
Id. at 20 n. 12 (citations omitted).
Therefore, we approve and reaffirm the language set forth in Carraway and adopt it as the proper standard to be applied when imposing punitive damages upon a defendant. Thus, applying the Corraway standard to the facts of the instant case, as we stated above, under no view of the evidence presented here would it be proper to impose punitive damages upon petitioners, White and Limerock. This holding renders it unnecessary to discuss petitioners' claim that the trial court erred in allowing respondents' safety expert to testify that petitioners were "knowingly exposing people to injury or death", since the trial court ruled that this testimony was allowed because punitive damages were at issue in the case. Accordingly, we quash the decision of the First District Court of Appeal upholding the award of punitive damages in this case.
We also agree with the petitioner that the trial court erred in admitting evidence of subsequent repairs to the loader. This case was tried by stipulation under the common law rules of evidence rather than the Florida Evidence Code; however, the result is the same under either. Until the adoption of the Florida Evidence Code in 1976, Florida followed the widely recognized rule that evidence of repairs made after an accident are not admissible to prove negligence or culpability on the part of the defendant. Seaboard Air Line Railway v. Parks, 89 Fla. 405, 104 So. 587 (1925). Section 90.407, Florida Statutes (1981) codifies this long-standing common law rule:
Evidence of measures taken after an event, which measures if taken before it occurred would have made the event less likely to occur, is not admissible to prove negligence or culpable conduct in connection with the event.
The rule is a sound one; otherwise, if such evidence could be admitted against a defendant he would be penalized for an attempt to prevent injury to others. Seaboard, 89 Fla. at 411, 104 So. at 589 (citation omitted).
In the present case the trial judge permitted testimony, over objection, from the operator of the loader that the day after the accident the loader was taken away to be repaired and that, when it was brought back the next day, its brakes were working "a lot better than [they] had at the beginning." The trial judge admitted this evidence because defense counsel would not stipulate that the loader's brakes were malfunctioning on the day of the accident. Respondents argue that this evidence was properly admitted as an exception to the rule for the purpose of impeachment or rebuttal. The fallacy in this argument lies in the fact that no evidence was offered by petitioners concerning the operation of the brakes on the day of the accident that respondents could properly impeach or rebut. Therefore, were we to find that this evidence was properly admitted, we would be "undermining the rule which was so long ago established." City of Miami Beach v. Wolfe, 83 So.2d 774 (Fla. 1955). Nonetheless, even though we find the subsequent repair evidence was improperly admitted, it was harmless error and does not warrant a new trial. Section 59.041, Florida Statutes (1981), prohibits ordering a new trial unless the improperly admitted evidence "has resulted in a miscarriage of justice." There was enough independent evidence of defendants' negligence admitted that made this testimony merely cumulative.
*1030 One additional point raised by petitioners merits discussion. Petitioners argue that some of the comments made by respondent's counsel during closing argument were improper and prejudicial. These comments concerned the differences in race and economic standing between the two parties, among other things. Some latitude is permitted when arguing the amount of "smart money" to punish defendants. See, e.g., Wackenhut Corp. v. Canty, 359 So.2d 430 (Fla. 1978); Tate v. Gray, 292 So.2d 618 (Fla. 2d DCA 1974); Dixie-Bell Oil Co. v. Gold, 275 So.2d 19 (Fla. 3d DCA 1973). However, since in today's decision we hold that the issue of punitive damages was improperly submitted to the jury, it was error for the trial judge to allow these comments. In any event, we hold that these comments do not amount to fundamental error, and therefore, they cannot form the basis for a new trial on appeal, since there was no timely and proper objection made by defense counsel. Tyus v. Apalachicola Northern Railroad, 130 So.2d 580, 587 (Fla. 1961); Bishop v. Watson, 367 So.2d 1073 (Fla. 3d DCA 1979).
Accordingly, we quash that portion of the district court's decision upholding the award of punitive damages and we affirm the remainder of the decision. This cause is remanded to the First District Court of Appeal with instructions to further remand same to the trial court for a new trial on the issue only of Mrs. Dupont's damages for loss of consortium.
It is so ordered.
BOYD, C.J., and OVERTON and McDONALD, JJ., concur.
ALDERMAN, J., concurs in part and dissents in part with an opinion.
EHRLICH, J., dissents with an opinion in which SHAW, J., concurs.
ALDERMAN, Justice, concurring in part, dissenting in part.
I dissent from that portion of the majority opinion which decides that we have jurisdiction of this case. Justice Ehrlich, in his dissenting opinion, accurately explains the lack of jurisdiction. A majority of this Court, however, has concluded that we have jurisdiction to address the merits of petitioners' claims. As to the resolution of the merits of this case, I concur with the majority opinion.
EHRLICH, Justice, dissenting.
I dissent.
The majority of the Court finds conflict between the decision of the First District Court of Appeal, White Construction Company v. DuPont, 430 So.2d 915 (Fla. 1st DCA 1983), and City of Miami Beach v. Wolfe, 83 So.2d 774 (Fla. 1955), which held that evidence of post-accident repairs was inadmissible. Conflict does not exist, in my opinion.
Five issues were raised in the district court. The court addressed only one of these issues, the award to the wife. The other four issues were dealt with summarily in a footnote as having no merit.[1] The question of the inadmissibility of evidence of post-accident repairs to the loader was among the footnoted issues.
I do not believe this Court has jurisdiction. On the question of conflict jurisdiction, Nielsen v. City of Sarasota, 117 So.2d 731, *1031 734 (Fla. 1960) (emphasis in original), tells us
While conceivably there may be other circumstances, the principal situations justifying the invocation of our jurisdiction to review decisions of Courts of Appeal because of alleged conflicts are, (1) the announcement of a rule of law which conflicts with a rule previously announced by this Court, or (2) the application of a rule of law to produce a different result in a case which involves substantially the same controlling facts as a prior case disposed of by this Court. Under the first situation the facts are immaterial. It is the announcement of a conflicting rule of law that conveys jurisdiction to us to review the decision of the Court of Appeal. Under the second situation the controlling facts become vital and our jurisdiction may be asserted only where the Court of Appeal has applied a recognized rule of law to reach a conflicting conclusion in a case involving substantially the same controlling facts as were involved in allegedly conflicting prior decisions of this Court. Florida Power & Light Co. v. Bell, Fla. 1959, 113 So.2d 697.
In clarifying the "expressly" requirement in this Court's constitutional jurisdiction to resolve conflicting appellate decisions,[2] we said
The first issue  the meaning of the expressly requirement  arises from the fact that the district court below did not identify a direct conflict of its decision with any other Florida appellate decisions. The court's opinion discusses, however, the basis upon which it reversed the trial court's entry of a directed verdict for Ford. This discussion, of the legal principles which the court applied supplies a sufficient basis for a petition for conflict review. It is not necessary that a district court explicitly identify conflicting district court or supreme court decisions in its opinion in order to create an "express" conflict under section 3(b)(3).
Ford Motor Co. v. Kikis, 401 So.2d 1341, 1342 (Fla. 1981). (Emphasis supplied.)
The conflict between the decisions of two district courts must appear within the four corners of each opinion. No longer are we permitted to go back into the record proper in order to make this determination.
The district court opinion in this case is devoid of any discussion as to why it allowed the evidence of post-accident repairs to stand. The opinion is likewise devoid of any reference to the circumstances under which the evidence of post-accident repairs was introduced. It is therefore impossible, in looking to the opinion alone, to find an announcement of a rule of law in conflict with Wolfe, or to determine whether a rule of law was applied to produce a different result in White involving substantially the same controlling facts as Wolfe. Conflict under Neilsen and Kikis therefore cannot be found. The majority had to go to the record to retrieve the facts given in its opinion on this issue, and it did so for the express purpose of establishing jurisdiction.
As I view it, this Court is hearkening back to the days of Foley v. Weaver Drugs, Inc. 177 So.2d 221 (Fla. 1965), where the record could be reviewed to determine if there was conflict to give this Court jurisdiction. A footnote statement by the district court that a point on appeal was raised but found to be without merit cannot and ought not be a basis for going into the record proper to determine conflict jurisdiction.[3] What the Court is doing today to *1032 find conflict jurisdiction will surely come back to haunt us in the future.
I would therefore discharge jurisdiction in this case as having been improvidently granted.
As to the question of the sufficiency of the evidence to go to the jury on the issue of punitive damages, I quite agree with the Court's approval and reaffirmation of the language set forth in Carraway v. Revell, 116 So.2d 16 (Fla. 1959), but it is my opinion that the evidence was clearly sufficient to support an award for punitive damages. I shall not belabor the evidence. Suffice it to say that backing a large 80,000 pound loader, twenty-two feet in height, at top speed with no brakes in an area where people are working, as in the instant case, easily meets the Carraway test of the character of negligence which will sustain an award of punitive damages. It ought to be the policy of this state that knowingly driving a motor vehicle at top speed with no brakes in an area where people are present is just as likely to cause injury and damages as the operation of a motor vehicle by an intoxicated driver. See Ingram v. Pettit, 340 So.2d 922 (Fla. 1976).
I agree with the majority that if it were error to admit evidence of post-accident repairs to the loader, such was harmless. In addition to the reasons relied on by the majority, I am more strongly persuaded that the error was harmless because of the factual situation, namely, a moving vehicle striking a parked vehicle. This Court has, since Bellere v. Madsen, 114 So.2d 619, 621 (Fla. 1959), consistently held that "where a defendant runs into the rear of plaintiff's car while plaintiff is stopped for a traffic light or at an intersection, there is a presumption of negligence of the defendant on which the plaintiff would be entitled to recover in the absence of an explanation by the defendant." Id. at 621. While this case doesn't involve a traffic light or an intersection, the principle is the same. Plaintiff's vehicle was stopped and the back end was struck by defendant's vehicle. There was no evidence to explain the collision except that the brakes were not operable. There was no evidence to overcome the presumption of negligence, and defendant was negligent as a matter of law and a directed verdict on the issue of negligence would have been in order. Under such circumstances, the inadmissible evidence was harmless.
My examination of the closing argument convinces me that the one objection made by defendant's counsel was without merit. I find nothing objectionable in the argument of plaintiff's counsel. Fair comment was made on the evidence presented and the inferences that could be drawn therefrom.
I would, therefore, discharge the case for lack of jurisdiction or if jurisdiction be proper, approve the decision of the district court of appeal.
SHAW, J., concurs.
NOTES
[1] The relevant text of the district court opinion:

Of the five points raised on appeal, we find merit only with point two, challenging the award of $1,025,000.00 to Janey DuPont, Nathaniel's wife, for loss of consortium as excessive. We therefore affirm without discussion points one, three, four and five and reverse as to point two only.[1]
[1] We find no merit, and therefore do not address, the remaining points raised by appellants which include: that the trial court erred in entering judgment for punitive damages, in not dismissing the complaint for improper venue, in admitting evidence of subsequent repairs to the CAT 988; and in denying a motion for new trial on the ground that inflammatory remarks by defense counsel during closing argument improperly influenced the jury and resulted in an excessive and judicially shocking award.
430 So.2d 915, 915-16.
[2] Art. V, § 3(b)(3), Fla. Const.
[3] See England, Hunter, & Williams, Constitutional Jurisdiction of the Supreme Court of Florida: 1980 Reform, 32 U.Fla.L.Rev. 147 (1980):

By providing both a new and virtually boundless level of review, the Foley doctrine exacted a high price in time and money for individual litigants and became a means of delaying lost causes. It also commanded significant time and energy from the supreme court's justices.
By the mid-1970's, a minority of new justices on the court began challenging the Foley doctrine. Their protests helped shape the 1980 amendment, and the legislative debates indicate clearly that the purpose for including the term "expressly" in section 3(b)(3) was to overrule Foley and thereby eliminate supreme court review of PCA's. A written opinion of the district court on the point of law sought to be reviewed is now an essential predicate for supreme court review.
... So-called "no merit opinions," which merely state that the court has reviewed the record and found no merit in the points presented and no reversible error in the record, should be [refused review].
Id. at 178-80 (emphasis supplied, footnotes deleted).