498 So.2d 859 (1986)
AMERICAN CYANAMID CO., Petitioner,
v.
Lester K. ROY, Respondent.
No. 67124.
Supreme Court of Florida.
October 23, 1986.
Rehearing Denied January 5, 1987.
*860 Paul R. Regensdorf of Fleming, O'Bryan & Fleming, Ft. Lauderdale, for petitioner.
Don Lacy, Tallahassee, and Earle Lee Butler of Butler & Pettit, P.A., Ft. Lauderdale, for respondent.
James E. Tribble of Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, amicus curiae for Florida Defense Lawyers Assn.
Edward T. O'Donnell of Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, and David G. Owen, Columbia, S.C., amicus curiae for The Product Liability Advisory Council, Inc.
C. Rufus Pennington, III of Margol, Fryefield & Pennington, Jacksonville, amicus curiae for The Academy of Florida Trial Lawyers.
Rodney L. Tennyson, West Palm Beach, amicus curiae for The Florida Consumers Federation.
ADKINS, Justice.
In American Cyanamid Co. v. Roy, 466 So.2d 1079 (Fla. 4th DCA 1984), the district court upheld the jury's verdict awarding plaintiff Roy punitive damages against defendant American Cyanamid Company (Cyanamid). We find conflict with our decision of White Construction Co., Inc. v. Dupont, 455 So.2d 1026 (Fla. 1984), and so exercise our jurisdiction under article V, section 3(b)(3) of the Florida Constitution. We quash that portion of the opinion under review approving the imposition of punitive damages in this case.
Over a ten-year period, Roy worked in jobs requiring exposure to a Cyanamid product, AM-9, which consists of 95% acrylamide. While the social and industrial utility of the product as a waterproofing sewer grout is uncontested, the chemical of which it is made has been established as toxic. Extensive laboratory research and experience in the field has linked acrylamide to a variety of ills ranging from neuropathy and ataxia to severe skin conditions. Roy, suffering a number of disturbances to his nervous system and found partially disabled by an examining physician, sued Cyanamid on theories of a negligent failure to warn and breach of warranty involving fraud and misrepresentation, and sought punitive damages.
The jury returned a special verdict finding Cyanamid negligent in failing to properly warn, and found Roy comparatively negligent in "failing to read or heed warnings or in using the AM-9," and reduced his compensatory damages of $292,000 by thirty percent. The jury also found, relevant to this appeal, that Cyanamid had "committed a fraud or misrepresentation" in its action, and that "the acts of the *861 defendant ... [were] done with malice, moral turpitude, wantonness, willfulness, or with reckless indifference to the rights of others." The jury heard evidence of Cyanamid's net worth of 1.5 billion dollars and awarded punitive damages of $45,000.
Cyanamid expresses deep frustration with the punitive damages awarded at trial and upheld upon appeal, contending that the imposition of such damages in this case lacks support in the case law and in public policy. Cyanamid argues that punitive damages are being routinely imposed in products liability suits without legal or factual justification. The award in this case, we believe, supports Cyanamid's contentions.
Even examining the evidence in a light most favorable to the plaintiff, and indulging every reasonable inference therefrom in the plaintiff's favor, as is required when the defendant moves for a directed verdict, Smith v. Brantley, 455 So.2d 1063 (Fla. 1st DCA 1984), rev. denied, 462 So.2d 1107 (Fla. 1985), in no way can Cyanamid's corporate behavior in relationship to its product of AM-9 sustain the award of punitive damages against it. The trial court should have granted Cyanamid's motion for directed verdict on the question of punitive damages.
This Court has repeatedly emphasized that the twin purposes of punitive damages  punishment of the offender and deterrence of others who might otherwise act similarly, Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981); Lassitter v. International Union of Operating Engineers, 349 So.2d 622 (Fla. 1976), are only served when the defendant's behavior transcends the level of simple negligence, and even gross negligence, U.S. Concrete Pipe Co. v. Bould, 437 So.2d 1061 (Fla. 1983), and enters the realm of wanton intentionality, exaggerated recklessness, or such an extreme degree of negligence as to parallel an intentional and reprehensible act. This Court has repeatedly striven to mark the line at which point behavior becomes sufficiently culpable to merit societal sanction through the punishing imposition of such damages. We once again point to the line drawn in our opinion of White Construction, in which we noted that "the character of negligence necessary to sustain a conviction for manslaughter is the same as that required to sustain a recovery for punitive damages." 455 So.2d at 1028, quoting Carraway v. Revell, 116 So.2d 16, 20 (Fla. 1959).
We repeat our observation in White limiting punitive damages to truly culpable behavior in order to emphasize that such damages, "reserved to those kinds of cases where private injuries partake of public wrongs," Ingram v. Pettit, 340 So.2d 922, 923-24 (Fla. 1976), are assessed in a dramatically different manner than compensatory damages. Unlike the latter, punitive damages are in a sense explicitly based on juror emotion, in that one function of the award is to express society's collective outrage at unacceptable behavior. The damages awarded are therefore based not on the plaintiff's actual damages but upon the wealth of the defendant and the perceived need to punish and deter. See Lassiter, 349 So.2d at 626.
We therefore reiterate our observations in White urging restraint upon the courts in ensuring that the defendant's behavior represents more than even gross negligence prior to allowing the imposition of punitive damages, in order to ensure that the damages serve their proper function. While we remain hesitant to have trial courts routinely remove the question from the jury's consideration, we note that a directed verdict may properly be granted unless the evidence establishes that the behavior in question involves the following type of misconduct:
The character of negligence necessary to sustain an award of punitive damages must be of a "gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that *862 entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them".
455 So.2d at 1029, quoting Carraway, 116 So.2d at 20 n. 12. As in White, and as in our more recent decision of Como Oil Co., Inc. v. O'Loughlin, 466 So.2d 1061 (Fla. 1985), we hold that under no view of the evidence does Cyanamid's conduct reach the willful and wanton level necessary to support an award of punitive damages. While the jury could conceivably have found Cyanamid negligent in its warning under the standard of duty set forth in, for example, Tampa Drug Co. v. Wait, 103 So.2d 603 (Fla. 1958), in no way does the evidence suggest even gross negligence, much less intentional misconduct.
The label printed on each eighty-pound bag of AM-9 read as follows:
Contains Acrylamide. Warning: Repeated skin contact, inhalation or swallowing may cause nervous system disturbances. Do not get in eyes, on skin, on clothing. Do not breathe dust. Wash thoroughly after handling. Wear clean work clothes daily. In case of contact, immediately flush eyes or skin with plenty of water. Wash contaminated clothing before reuse.
In spite of the district court's observation that one "expert defense witness stated the warning on bags of AM-9 should make clear that acrylamide is a contact poison, and that brain and nerve damage can result from repeated exposure," 466 So.2d at 1083, an examination of the content of the warning and Cyanamid's corporate behavior indicates a clear lack of that level of culpability justifying punitive damages. Prior to focusing on the warning, we turn to Cyanamid's behavior in relationship to the product in question.
Prior to its development of acrylamide in the early 1950's, Cyanamid had taken the initiative to create a "Label Committee," performing the functions of evaluating the need for any precautionary or warning labels and drafting such labels. The corporation continually funded both in-house and outside research in collaboration with universities and others, and published the information for the benefit of the medical and professional communities. The company prepared and distributed extensive and detailed manuals geared towards dissemination of information designed to protect the product's ultimate users. It also distributed placards, posters, and other pictographic information describing the proper usage and handling of AM-9, and conducted three-day seminars on the safe use of the product. A "canned" version of the seminar, including 35 mm slides, was made available to the company which supplied the equipment and acrylamide materials to Roy's employer.
The evidence thus indicates a high level of conscientiousness and concern rather than that "entire want of care which would raise the presumption of a conscious indifference to consequences." White, 455 So.2d at 1029, quoting Carraway, 116 So.2d at 20 n. 12. Further, we find no flagrant breach of duty in the warning in spite of the plaintiff's expert's testimony that it amounted to a "terrible misrepresentation." We note that Cyanamid was prohibited by the United States Department of Transportation, which had adopted the guidelines of the Manufacturing Chemist's Association, from using the words "danger" or the "skull and crossbones" poison symbol urged by plaintiff's expert. In an effort to avoid "overwarning," and a dilution of proper consumer respect for the credibility of industry warnings, these signals are limited to substances found "highly toxic," and acrylamide has been established as simply "toxic." The product has never caused death, and many are exposed to the product over a long period of time with no adverse effects. While we agree *863 with the district court that compliance with industry guidelines should not be taken as conclusive evidence bearing on the question of a corporation's negligence, such information may certainly bear on whether a party's behavior represents such an extreme departure from accepted standards of care as to justify punitive damages. See Tampa Drug Co. v. Wait, in which we found evidence of the identical industry guidelines admissible into evidence.
In short, we agree with the dissenting judge below that "[t]he facts simply do not reflect the kind of flagrant misconduct that would justify a finding of willful and wanton disregard for the safety of persons such as [Roy]." 466 So.2d at 1085. We therefore quash that portion of the district court's opinion affirming the award of punitive damages against Cyanamid.
Finally, Cyanamid contends that the introduction into evidence of its substantial net worth, properly bearing on the issue of punitive damages, so prejudiced the jury that a new trial must be held on the issue of compensatory damages. We disagree, finding the $292,000 awarded Roy as compensation for claims of lost past and future wages, pain and suffering, permanent disability, mental anguish and other damages well within a proper range. Cyanamid has failed to meet its burden of establishing that the verdict is unsupported by the evidence or that "it is manifestly so excessive as to ... be indicative of prejudice, passion or corruption on the part of the jury." Lassiter, 349 So.2d at 627, quoting Odoms v. Travelers Insurance Co., 339 So.2d 196, 198 (Fla. 1976).
We therefore approve the award of compensatory damages, to be reduced by Roy's comparative negligence, and strike the punitive damages imposed in the case. The remainder of the district court opinion is approved.
This cause is remanded to the district court with instructions to further remand same to the trial court so that a final judgment may be entered in accordance with this opinion.
It is so ordered.
McDONALD, C.J., and BOYD, OVERTON, EHRLICH and SHAW, JJ., concur.