501 So.2d 635 (1986)
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Appellants,
v.
David ANDERSON and Jo an Anderson, Appellees.
No. BK-396.
District Court of Appeal of Florida, First District.
December 22, 1986.
Rehearing Denied February 23, 1987.
Patricia E. Cowart and Steven M. Greenbaum of Ruden, Barnett, McClosky, Schuster & Russell, Miami and Curtin R. Coleman, Fort Lauderdale, for appellants.
Thomas M. Ervin, Jr., of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, for appellees.
*636 THOMPSON, Judge.
Merrill Lynch, Pierce, Fenner & Smith (Merrill Lynch) the plaintiff and counter defendant below, appeals a judgment in favor of David and Jo An Anderson entered on both Merrill Lynch's five count complaint and David Anderson's counterclaim. On appeal Merrill Lynch asserts several grounds why it should be granted a new trial. Because we agree that under the circumstances a new trial is warranted, we reverse the judgment and remand for a new trial on all counts.
This case arose out of a series of events occurring in September 1978. The Andersons maintained an account with Merrill Lynch which David Anderson utilized to engage in a fairly extensive amount of trading in stock options, a volatile, speculative and high risk type of investment. The account required the Andersons to periodically provide Merrill Lynch with payment for the amount of the debit balance of the account. The controversy in the instant case began when David Anderson delivered two checks to Merrill Lynch in the approximate amounts of $53,000 and $83,000, dated Sept. 14 and 18, 1978, respectively. Both checks were subsequently returned marked "insufficient funds". David Anderson acknowledged that he knew there was not enough money in the account to cover the checks, but asserts that Merrill Lynch was aware of this fact when it accepted the checks. He also asserted that Merrill Lynch knew that sufficient funds could only be provided by the sale of options currently being held in the margin account. According to David Anderson, he ordered such a sale on Sept. 18, 1978. However no sale actually took place until Sept. 21, 1978 when the market price of the options had dropped substantially.
Merrill Lynch denied any knowledge that the checks were drawn on insufficient funds until after they had been deposited and returned by the bank on Sept. 21, 1978. It also denied that Anderson placed any sell order on Sept. 18, 1978. On Sept. 21, the day the two checks were returned by the bank, Merrill Lynch liquidated the contents of the Anderson account in accordance with the terms of the parties' agreement which provided for such liquidation should Merrill Lynch deem itself insecure. Because the market price of the options had dropped, the sale yielded only $16,000 to be applied against the $136,000 debt owed by the Andersons. Therefore approximately $120,000 was still owed on the account.
Merrill Lynch's and David Anderson's versions of what transpired next differ sharply. Anderson states that when he realized his Sept. 18 sell order had not been executed until Sept. 21, resulting in a substantial loss, he confronted his broker and the office manager. According to Anderson, both men told him that Merrill Lynch's position would be to deny that any sell order was placed on Sept. 18. Merrill Lynch subsequently contacted him and asked if he would be willing to execute a promissory note and mortgage in favor of Merrill Lynch to satisfy the indebtedness and avoid litigation. Anderson refused.
According to Merrill Lynch, on Sept. 21 David Anderson acknowledged that the two checks were drawn on insufficient funds. He then agreed to the liquidation of his account and voluntarily went to the office manager to explain his predicament and to see what could be worked out. An agreement was reached that Anderson would execute a note and mortgage for the amount due, and upon his request it was decided that his former law partner would draw up the necessary papers. The documents were prepared, but were never signed, and litigation commenced when Merrill Lynch filed suit against the Andersons in December 1978.
Merrill Lynch's five count complaint alleged causes of action for account stated, open account, dishonored check, fraud and civil theft, and sought to recover the $120,000 due on the account as well as punitive damages. David Anderson, individually, filed a counterclaim seeking compensatory and punitive damages for gross negligence. The cause did not proceed to trial until October 1985, almost seven years later. *637 Much of the delay was attributable to the difficulty Merrill Lynch encountered obtaining discovery from the Andersons. The court repeatedly ordered the Andersons to comply with Merrill Lynch's discovery demands. At one point the court even imposed sanctions on the Andersons which, on appeal, were found to be too severe. Anderson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 434 So.2d 43 (Fla. 1st DCA 1983).
The jury trial took four days and encompassed the testimony of ten witnesses, including that of David Anderson, who acted as attorney for himself and his wife. After the Andersons had rested on their counterclaim, and again at the close of all the evidence, Merrill Lynch unsuccessfully moved for a directed verdict on the counterclaim. Following the closing arguments and instructions the jury retired. After approximately two hours of deliberation the jury requested a written copy of the jury instructions, particularly those on the dishonored check, fraud and civil theft counts. Instead the judge replayed the court reporter's audio tape of the entire jury instructions and the jury again retired. After a total of five hours deliberations the jury returned the following verdict:
Count 1: Account stated  For the Andersons
Count 2: Open account  For the Andersons
Count 3: Dishonored check  For the Andersons
Count 4: Fraud  For Merrill Lynch
Count 5: Civil theft  For Merrill Lynch
Counterclaim: Gross negligence  For the Andersons The jury awarded the Andersons $161,361 compensatory damages and $500,000 punitive damages, and denied Merrill Lynch any damages. Merrill Lynch timely filed a motion for judgment in accordance with its previous directed verdict motions or in the alternative, for a new trial. The motion was denied and instead the judge entered a "Judgment NOV" in the Anderson's favor on the fraud and civil theft counts.
On appeal Merrill Lynch raises several issues. First Merrill Lynch argues that the trial court erred in failing to grant a new trial because the jury verdict was so inconsistent that it was clear the jurors were hopelessly confused. We agree. It was uncontroverted that David Anderson delivered two checks to Merrill Lynch knowing that there were insufficient funds in the account to cover them. Nevertheless, the jury concluded that the Andersons owed Merrill Lynch nothing on their account (Counts 1 and 2), and that the Andersons did not deliver two worthless checks (Count 3). However, the jury did determine that the Andersons defrauded Merrill Lynch and committed civil theft (Counts 4 and 5). The components of this contradictory verdict are irreconcilable under any view of the evidence. There is no doubt but that the jury misconceived the evidence or instructions or both, and under these circumstances the court erred in failing to grant a new trial. See Tampa Waterworks Co. v. Mugge, 60 Fla. 263, 53 So. 943 (Fla. 1910); Jordan v. Reynolds, 154 So.2d 200 (Fla. 3d DCA 1963).
The court's error in failing to grant a new trial was compounded by its sua sponte entry of a judgment notwithstanding the verdict on the fraud and civil theft counts. The court had no authority to enter such a judgment as the Andersons had at no point sought a directed verdict on any portion of Merrill Lynch's claim. Fla.R. Civ.P. 1.480(c) specifically states that a judgment notwithstanding the verdict cannot be entered unless a directed verdict was requested earlier in the case. Author's Comment to Rule 1.480; Honda Motor Co., Ltd. v. Marcus, 440 So.2d 373 (Fla. 3d DCA 1983), rev. dismissed, 447 So.2d 886 (Fla. 1984); Laird v. Potter, 367 So.2d 642 (Fla. 3d DCA), cert. denied, 378 So.2d 347 (Fla. 1979).
Even if the Andersons had properly moved for a directed verdict and renewed the motion at the appropriate times, there is no basis for the entry of a judgment notwithstanding the verdict on the fraud and civil theft counts. Such a judgment *638 is determined on the same basis as a directed verdict: it will be granted only if there is no evidence or reasonable inference therefrom supporting a verdict for the other party. Laird v. Potter; Wheaton v. Bohnert Roofing & Supply Co., Inc., 369 So.2d 1016 (Fla. 3d DCA 1979); Wilson v. Tanner, 346 So.2d 1077 (Fla. 1st DCA 1977); Brown v. Walker, 306 So.2d 209 (Fla. 1st DCA 1975). A judgment notwithstanding the verdict was clearly inappropriate in the instant case since the parties presented sharply contrasting views of what took place in September 1978. There was no basis, procedurally or factually, for the court's entry of judgment notwithstanding the verdict.
Merrill Lynch also argues that the jury verdict in the amount of $161,361 is against the manifest weight of the evidence. Throughout the trial, a variety of market prices for the options were put into evidence. The prices were garnered from different exchanges for the dates Sept. 18 through Sept. 21. As well as differing from day to day, the market values vary during the course of the day, and from exchange to exchange. In awarding the Andersons damages in the amount of $161,361 the jury obviously accepted David Anderson's testimony that he ordered the sale on Sept. 18, and then calculated his loss by virtue of the delayed sale and price decline, based on a Sept. 18 selling price of 6.75. Although numerous market prices were discussed, this particular price was mentioned only once: in David Anderson's closing argument. No testimony was adduced by either party that this was an actual selling price on any of the exchanges on any of the days in question. It is clear, therefore, that the jury disregarded all the evidence and merely applied the unsupported sales price mentioned in Anderson's closing argument in calculating the damage award. This reinforces the conclusion that the jury's verdict was the product of confusion and misunderstanding. Since a new trial is warranted as discussed supra, the issue of damages must be revisited as well.
Finally, Merrill Lynch argues that David Anderson's counterclaim for gross negligence is insufficient to support a claim for or an award of punitive damages. We agree. The basis for punitive damages on the counterclaim is Merrill Lynch's negligence in failing to timely execute Anderson's sell order and its conspiracy to cover-up its error and foist the resulting loss on the Andersons. The counterclaim fails to allege, and the evidence did not show, any tortious conduct independent of the conduct on the part of Merrill Lynch which constituted a breach of the parties' agreement. Punitive damages are not recoverable in a suit on a contract, absent an accompanying independent tort. Lewis v. Guthartz, 428 So.2d 222 (Fla. 1983); Taylor v. Kenco Chemical & Manufacturing Corp., 465 So.2d 581 (Fla. 1st DCA 1985). In the instant case the only duty owed Anderson by Merrill Lynch arose out of their contract, and Anderson did not allege or prove any conduct which constituted an independent tort. Even if a tort theory of recovery was available, the evidence adduced fell short of demonstrating the requisite outrageous, malicious, fraudulent, wanton or oppressive conduct necessary to support an award of punitive damages. American Cyanamid Co. v. Roy, 498 So.2d 859. (Fla. 1986); White Construction Co., Inc. v. Dupont, 455 So.2d 1026 (Fla. 1984).
The other points on appeal raised by Merrill Lynch need not be addressed in light of our decision to remand for a new trial on all counts. The judgment in favor of the appellees is reversed and the cause is remanded for a new trial on the issues of liability and damages.
REVERSED and REMANDED.
JOANOS and NIMMONS, JJ., concur.