PER CURIAM.
This appeal is brought by the plaintiff from a judgment notwithstanding the verdict in a negligence action.
*323 On June 5, 1985, around midnight, sixteen-year-old Marie Molinari climbed over a twelve-foot fence surrounding a Florida Keys Electric substation, where she then climbed a forty-foot tower supporting power lines. There is evidence that the emotionally troubled young woman intended to commit suicide. After standing near the top of the tower for nearly an hour, Marie began to scream for help. Rescue personnel who responded to her cries were told to stay away because she, allegedly, had threatened to jump. Florida Keys Electric brought a cherrypicker — a lift with a bucket — to the scene but made no attempt to rescue Molinari because she wanted no one to enter the substation.
Marie finally told rescue workers that she wanted to talk to her high-school principal, Michael Lannon, a person whom she trusted. Lannon arrived on the scene and began a conversation with her. Marie also allowed a Florida Keys Electric worker into the substation, although there is a dispute as to the reason, either to allow him to shut off the electrical power or to punch a card on the employers’ time clock. Once inside, the workman called his supervisor and told him that the sheriffs department wanted the substation turned off. When the supervisor told the workman at the substation that turning off both towers would leave virtually all of Key Largo without power, the sheriffs department asked whether power to the south tower could be shut down separately. The supervisor responded that he thought it could be done and gave the workman instructions for throwing a particular circuit breaker. With the switch thrown, the substation and the surrounding area were left in total darkness.
After 20-30 minutes of coaxing, Lannon, Marie’s high-school principal, was unable to persuade her to come down from the tower. She agreed, however, to meet him half-way so as to continue their conversation and to be reassured that she was not in trouble with authorities for trespassing on the tower. Lannon was led to believe that the electrical power was off and that it was safe to climb the tower. Nevertheless, he was cautioned that there might be residual power in the internal workings of the tower and to stay on the east, outside of the tower, to avoid the power source. Marie too was told that it would be “O.K.” to climb down.
At a point where Molinari and Lannon should have met, an arc of electricity hit Marie, followed immediately by a fireball. Although Lannon was temporarily blinded, he said he could smell burning flesh and hair. Marie temporarily lost consciousness but then opened her eyes to see and feel her clothes and face afire. Officials on the ground threw more switches, then climbed the tower without further incident to rescue both Lannon and Marie. Marie suffered severe burns over most of her body.
An action was brought against Florida Keys Electric by Marie and her parents, alleging, inter alia, that the electric company negligently failed to shut off the power and negligently failed to warn the plaintiff that the power was still on.
After a trial, the jury found both parties negligent and apportioned 90% of the fault to Marie and 10% to Florida Keys Electric. Nevertheless, the jury awarded Marie zero damages and awarded her parents only the amount they had expended on past medical bills. Plaintiffs’ motion for a new trial was denied. The defendant’s motion for a Judgment Notwithstanding the Verdict was granted.
Marie raises four issues on appeal: (1) the court erred in granting a judgment notwithstanding the verdict; (2) a new trial should have been granted; (3) the court erred in instructing the jury on the issues of duty and comparative negligence; and (4) the trial should have been moved to Dade County. We agree with the first two points and remand for a new trial on damages.
There was no basis for the court’s entry of a judgment notwithstanding the verdict in this case where the jury, based on the evidence, could reasonably have found for the plaintiff on the issue of liability. A judgment notwithstanding a verdict may be granted only if there is no evidence on which the jury could lawfully have reached its verdict. Merrill Lynch, Pierce, *324 Fenner & Smith, Inc. v. Anderson, 501 So.2d 635 (Fla. 1st DCA 1986), rev. denied, 511 So.2d 297 (Fla.1987); Owen v. Bay Memorial Medical Center, 443 So.2d 128 (Fla. 1st DCA 1983), rev. denied, 450 So.2d 487 (Fla.1984). The plaintiffs presented evidence showing that the power company employee was uncertain as to which switch controlled the flow of electricity and that he, nevertheless, informed Lannon that it was safe to go up, and to coax Marie down from the tower. Even under the minimal standard of care owed by a landowner to a discovered trespasser, i.e., not to wantonly cause harm, see Wood v. Camp, 284 So.2d 691 (Fla.1973), a directed verdict was still improper because the jury could have found that Florida Keys’ conduct amounted to a wanton infliction of harm.
Further, the trial court erred in denying the plaintiffs’ motion for a new trial on the issue of damages. The law in Florida on this issue was recently addressed in Hartsfield v. Orlando Regional Medical Center, Inc., 522 So.2d 66, 68 (Fla. 5th DCA 1988), where the court, citing a plethora of authority, wrote, “The law seems to be very clear, almost without exception, that when a plaintiff has suffered some damages from the negligence of the defendant, the jury cannot reasonably return a verdict for zero damages, and the appellant is entitled to a new trial.” See also Butte v. Hughes, 521 So.2d 280 (Fla. 2d DCA 1988) (new trial should have been granted where jury’s zero verdict was totally inconsistent with its finding of permanent injury). On the undisputed evidence that the plaintiff suffered serious bodily injury and permanent disfigurement, and the finding that the injury was caused, in part, by the defendant’s negligence, a zero damage award to the plaintiff cannot stand.
No reversible error is shown on the remaining issues relating to jury instructions and venue.
Reversed and remanded for a new trial on damages.