699 So.2d 247 (1997)
Terry HECKFORD, Appellant,
v.
FLORIDA DEPARTMENT OF CORRECTIONS, an Agency of the State of Florida, Appellee.
No. 96-405.
District Court of Appeal of Florida, First District.
May 12, 1997.
Rehearing Denied September 19, 1997.
*248 Peter M. Siegel and Randall C. Berg, Jr., Florida Justice Institute, Inc., Miami, for Appellant.
Robert A. Butterworth, Attorney General and Cecilia Bradley, Assistant Attorney General, Tallahassee, for Appellee.
JOANOS, Judge.
This case concerns a lawsuit brought by Terry Heckford (appellant), a prisoner in the custody of the Department of Corrections (DOC), for alleged injuries he suffered while incarcerated at Martin Correctional Institution. The issue is whether the trial court erred in setting aside a jury verdict in appellant's favor, and in granting the motion of the Department of Corrections (DOC) for a new trial. We reverse.
In 1974 and in 1979, prior to his involvement with the criminal justice system, appellant injured his left knee playing sports. He underwent knee surgery and physical therapy, and recovered sufficiently to engage in normal daily activities as well as to engage in sports, to a limited extent. In 1986, appellant injured his right knee in an automobile accident. Treatment for this injury involved the use of a leg brace for six weeks. At the end of that time, appellant's right leg was still somewhat impaired, but he was able to resume his normal activities.
There was evidence that in July or August 1986, appellant entered into DOC custody. As part of the DOC Reception and Medical Center procedure, appellant was examined by an orthopedist who advised that he needed knee surgery. Restrictions were placed on appellant's physical activities, and he was given a cane and a special pass for assignment to a lower bunk. In December 1986, surgery was performed on appellant's right knee. The surgery was followed by an intensive program of physical therapy. In addition, appellant was provided with Lenox-Hill knee braces for both legs,[1] which the surgeon *249 specified he should wear for a year to eighteen months.
In March or April 1987, appellant was discharged from the Reception and Medical Center, and moved to Baker Correctional Institution (Baker CI). While at Baker, appellant continued on his own with the prescribed physical therapy, and he was permitted to wear his braces. Despite some residual post-operative pain, appellant reported that his legs were improving.
On July 6, 1987, appellant was transferred to Martin Correctional Institution (Martin CI). He was wearing his knee braces when he arrived at Martin CI, but they were confiscated during the entry search every inmate must undergo upon arrival at the institution. Since appellant had a special medical classification, he was seen by the staff physician as part of the entry procedure. The medical entry of the Martin CI staff physician for July 6, 1987, described appellant thusly:
Unsteady gait. Left knee seems to give away on ambulation. Weakness both knee joints. Continue knee brace support for stabilizing ambulation.
The staff physician's medical entry for the following day, July 7, 1987, states in part:
Patient is able to ambulate without his knee braces. Ambulation is fair on short distance. Patient does start to get unsteady on long distances. Patient's brace unsatisfactory in terms of safety plan.
The staff physician provided appellant with a cane and a pass for a bottom bunk, but told appellant his knee braces could not be returned because they constituted a threat to the security of the institution.
The evidence reflects that despite the staff physician's issuance of a lower bunk pass, while at Martin CI, appellant was housed on the second floor of his dormitory and was assigned to a top bunk. His requests for a first floor room and a lower bunk assignment were never granted during his incarceration at Martin CI. After refusing an order to climb a ladder, appellant lost sixty days of gain time. Upon his release from disciplinary confinement, appellant again was assigned to the second floor. Shortly thereafter, appellant requested protective custody, because his legs were getting worse. During his time in protective custody, appellant was sent to an orthopedist. After two falls from his top bunk and declaration of a medical emergency, appellant was transferred from Martin CI.
Appellant was returned to the Reception and Medical Center in November 1987, and underwent surgery in December 1987. His post-operative discharge orders directed that he undergo a program of maximum physical therapy, and continue to use his leg braces until directed to do otherwise by the surgeon. From the Reception and Medical Center, appellant was sent to Tomoka Correctional Institution (Tomoka CI), where he was permitted to use his braces. Subsequently, appellant was assigned to Polk and Sumter Correctional Institutions; he was allowed to use his leg braces at both institutions.
On September 6, 1988, appellant was sent by the medical department of Tomoka CI to Dr. Joseph Ferrer for an independent medical examination. In November 1988, appellant filed suit against the DOC. In his complaint, appellant alleged the DOC personnel at Martin CI were negligent and deliberately indifferent to appellant's medical needs while he was incarcerated at that institution.
During the trial, Dr. Vinger, appellant's expert witness, described the regression in the condition of appellant's knees during the period of his incarceration at Martin CI. Dr. Vinger compared the condition of appellant's knees as revealed by x-rays taken in December 1986, before and after the initial DOC surgery, with the condition of appellant's knees in November 1987, when he was transferred from Martin CI back to the Reception and Medical Center. Dr. Vinger explained that x-rays taken in November 1987 showed evidence of significant degenerative arthritis that had not been present in the 1986 films. Among other things, Dr. Vinger testified that
the acceleration and increased evidence of degenerative arthritis was as a result of the wear and tear from normal activity and *250 the activities that Mr. Heckford was involved in terms of getting on and off his bunk and that activity without having braces was the cause of the acceleration of the degeneration.
The doctor explained that knee braces provide support for individuals such as appellant, who have suffered cartilage or ligament damage. Without the knee brace, such individuals would experience excessive sliding of the thigh bone over the lower bone and a rotational movement of the knee joint. Dr. Vinger opined that the increased evidence of degenerative arthritis which occurred in appellant's knees during his stay at Martin CI resulted from denying him the use of his leg braces. Dr. Vinger further opined that within a reasonable degree of medical probability appellant should have been permitted to use his braces while he was at Martin CI, and the medical staff at Martin departed from the accepted standard of medical care in the community when they failed to authorize appellant to use his braces.
At the conclusion of Dr. Vinger's testimony, and over DOC objection, the trial court admitted Dr. Ferrer's report into evidence. The report states in part:

IMPRESSION: Bilateral degenerative arthritis of both knees secondary to anterior cruciate deficiency bilaterally. Specifically this patient was instructed by previous orthopaedic surgeons to use bilateral knee braces and he was not using them for approximately one year and this could definitely have some influence on his present degree of arthritis. In other words, if he did not use the braces as instructed it could have accelerated the arthritis and degeneration present in both knees. For the future he should continue using the Lennox-Hill braces or similar type of braces bilaterally when he is active. He should also continue with a program of muscle strengthening of the legs especially for hamstring strengthening and quadriceps strengthening bilaterally.

PLAN: He is here for Independent Medical Evaluation only and no treatment is rendered. This patient has reached maximum medical improvement and has an impairment of the body as a whole of 20% secondary to loss of function of the anterior cruciate ligaments on both knees.
The jury found the personnel at Martin CI had been negligent, and awarded appellant total damages in the amount of $60,000.00. After a review of the DOC motions for a directed verdict, the trial court issued the order which is the subject of this appeal.
The order granting a new trial involves a legal question. When the issue under review is essentially legal, the ruling is not entitled to the broad deference generally afforded a trial court's decision to override a jury's verdict in cases where the court found the verdict contrary to the manifest weight of the evidence. See Tri-Pak Machinery, Inc. v. Hartshorn, 644 So.2d 118, 119 (Fla. 2d DCA 1994). See also American Employers' Insurance Company v. Taylor, 476 So.2d 281, 283 (Fla. 1st DCA 1985)("if the trial court's ruling is grounded on a question of law, the appellate court is on the same footing as the trial judge ... and the broad discretion rule loses much of its force and effect"). While it is difficult to categorize any trial error as purely legal, "a trial judge's discretion progressively diminishes as an issue becomes increasingly legal." Tri-Pak Machinery, 644 So.2d at 119-120, n. 1.
The trial court in this case admitted Dr. Ferrer's report under section 90.803(6), Florida Statutes, the business records exception to the hearsay rule. Section 90.803(6) provides in pertinent part:
90.803 Hearsay exceptions; availability of declarant immaterial.... the following are not inadmissible as evidence, even though the declarant is available as a witness:
....
(6) RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY.
(a) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony *251 of the custodian or other qualified witness, unless the sources of information or other circumstances show lack of trustworthiness. The term "business" as used in this paragraph includes a business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
(b) No evidence in the form of an opinion or diagnosis is admissible under paragraph (a) unless such opinion or diagnosis would be admissible under ss. 90.701-90.705 if the person whose opinion is recorded were to testify to the opinion directly.
Appellee argues that a proper foundation was not laid for admission of Dr. Ferrer's report, and Dr. Ferrer could not have testified at trial because his opinions were not expressed in terms of reasonable medical probability. We disagree. "Under the business records exception, the trustworthiness of medical records is presumed." Love v. Garcia, 634 So.2d 158, 160 (Fla.1994); Brock v. State, 676 So.2d 991, 996 (Fla. 1st DCA 1996). Where the parties agree that the testimony of the records custodian is not necessary, medical records may be introduced into evidence under the business records exception to the hearsay rule, without the testimony of a qualified witness as to the section 90.803(6)(a) predicate. Phillips v. Ficarra, 618 So.2d 312, 313-314 (Fla. 4th DCA 1993).
At the trial of this cause, counsel for DOC objected to admission of Dr. Ferrer's report, but raised no objection to the lack of a records custodian or other qualified witness to lay the predicate required by section 90.803(6)(a). We conclude the need to lay a foundation was obviated by the parties' implicit waiver of testimony of the records custodian. Dr. Ferrer's report of his independent medical examination of appellant is one aspect of the medical records regularly kept by the DOC in the course of its custodial responsibility for inmates in state custody. The report was included in the medical record compiled and maintained by the DOC for this particular inmate. DOC failed to show that the report was not made at or near the time of the evaluation, that the record was not kept as part of the DOC's regularly conducted business activity with respect to responsibility for inmates placed in DOC custody, or that the information in the record was not supplied by a person acting within the course of a regularly conducted business activity. We conclude the absence of a records custodian does nothing to impair the trustworthiness, hence the admissibility, of Dr. Ferrer's report. Further, section 90.803(6) contains no provision that, to be admissible, the opinions contained in a written medical report must be expressed in terms of reasonable medical probability.
Unfortunately, the record before us does not contain appellee's renewed motion for directed verdict, and the order does not indicate what persuaded the trial court to find admission of Dr. Ferrer's report constituted error that would require a new trial. Since DOC failed to prove that Dr. Ferrer's report is not trustworthy, the trial court properly admitted the report into evidence under the business records exception. Love v. Garcia, 634 So.2d at 160. In sum, we conclude the trial court's initial ruling was correct.
Accordingly, the order setting aside the jury verdict and granting a new trial is reversed, and the cause is remanded with directions to give effect to the jury's verdict.
WOLF and PADOVANO, JJ., concur.
NOTES
[1] A Lenox-Hill brace is a device that is used to keep the knee joint in proper alignment and to prevent any rotational movement of the joint.