899 So.2d 369 (2005)
The ESTATE OF Lucille WILLIAMS, by and through Dorothy Mae WILLIAMS, Personal Representative, Appellant,
v.
TANDEM HEALTH CARE OF FLORIDA, INC., Appellee.
No. 1D03-1657.
District Court of Appeal of Florida, First District.
March 29, 2005.
*371 Jane Kreusler-Walsh and Rebecca Mercier-Vargas of Jane Kreusler-Walsh, P.A., West Palm Beach, and Melanie L. Bossie, A. Lance Reins, Susan B. Morrison, and James E. Wade, III, of Wilkes & McHugh, P.A., Tampa, for Appellant.
Thomas J. Guilday, Vikki R. Shirley, and Elizabeth G. Demme of Huey, Guilday, Tucker, Schwartz & Williams, P.A., Tallahassee, for Appellee.

ON MOTION FOR REHEARING [Original opinion at 2005 WL 94505]
ERVIN, J.
We withdraw our previous opinion issued January 19, 2005, and substitute the following. In an action brought for damages under the Nursing Home Residents' Rights Act (RRA) and the Wrongful Death Act (WDA) against Tandem Health Care of Florida, Inc. (Tandem), the Estate of Lucille Williams appeals an order granting Tandem's motion for new trial directed to the jury's return of noneconomic damages awarded to Williams' nine adult children, and denying the estate's request to amend its complaint by adding a claim for punitive damages. We affirm as to both issues.
Lucille Williams, 74 years old, died from a fall suffered while she was a resident in the care of Tandem. She had been hospitalized for congestive heart failure, pulmonary embolism, and renal kidney failure, and was discharged to Tandem's supervision on February 23, 2000. The Tandem staff knew that Williams was at risk for falling, and her care plan included interventions to prevent falls. Notwithstanding Tandem's knowledge, Williams fell while unattended three days after her admission, but sustained no injury. Thereafter, on February 29, around 3:15 a.m., Williams *372 called for assistance to go to the bathroom. A licensed practical nurse (LPN), Beatrice Haynes, escorted Williams to the bathroom and instructed her to use the call light when she was finished. Williams instead attempted to return to bed without calling, and when Nurse Haynes returned, she found Williams lying on the bathroom floor, complaining of pain in her sacrum. Another LPN assessed Williams, performed neurological checks, and considered her normal. Later during the morning, when Williams could not be aroused, she was transported to the hospital. An intracranial bleed was discovered, and, because she had given a do-not-resuscitate order, she was allowed to expire.
The estate brought an action for damages under three claims, two of which are pertinent to this appeal.[1] The estate alleged (1) deprivation or infringement of a nursing-home resident's rights under section 400.23, Florida Statutes (2000), of the RRA, authorizing the recovery of "actual and punitive damages," and (2) wrongful death under section 768.21, Florida Statutes (2000), permitting awards for medical and funeral expenses, and noneconomic damages for certain designated beneficiaries. On the morning of trial, the parties, knowing that Somberg v. Florida Convalescent Centers, Inc., 779 So.2d 667 (Fla. 3d DCA 2001), was pending for review before the Florida Supreme Court, presented argument to the trial court on the measure of damages which could be awarded. The estate maintained it should be permitted to seek damages under the RRA claim for Williams' pre-death pain and suffering, consistent with Somberg and Beverly Enterprises-Florida, Inc. v. Spilman, 661 So.2d 867 (Fla. 5th DCA 1995). Tandem, relying on First Healthcare Corp. v. Hamilton, 740 So.2d 1189 (Fla. 4th DCA 1999), argued that no language in section 400.023 explicitly affords a personal representative a right of action for the decedent's pain and suffering if the death results from a deprivation of a nursing-home resident's rights, and that the damages recoverable under section 400.023 are limited to those a personal representative is authorized to recover under the WDA. The court thereafter entered a pretrial order stating it would follow Hamilton; as a result, the damages sought under the RRA for Williams' pain and suffering from the time of injury to the time of death were not presented to the jury, and the verdict form given the jury was consistent with the court's ruling.
The jury returned verdicts finding, as to the RRA claim, that Tandem had deprived Williams of such rights, and that her conduct did not contribute to the injuries, and, as to the WDA claim, that Tandem's professional negligence was 95 percent the cause of Williams' death, and Williams' negligence the remaining five percent. As a result of those findings, the jury awarded $220,000 in noneconomic damages to each of the decedent's nine adult children, and $9,631 in medical, nursing, and funeral expenses to the estate.[2]
Following the return of the verdicts, Tandem filed several posttrial motions, and, during their pendency, the supreme court approved the holdings in Somberg and Spilman, concluding that the WDA did not limit a deceased resident's damages under section 400.023. Florida Convalescent Centers v. Somberg, 840 So.2d *373 998 (Fla.2003) (Somberg II). Thereafter, Tandem amended its earlier motion for new trial, acknowledging the effect of Somberg II, and conceding that because the verdict form did not ask the jury to determine whether Williams had suffered actual damages under the RRA count, the estate was entitled to a new trial on such damages.
The court thereupon ordered a new trial wherein the estate would be permitted to seek RRA damages for the deceased resident's pain and suffering,[3] and it set aside the awards of noneconomic damages to Williams' nine heirs, because, in the court's judgment, neither the RRA nor the WDA authorized such awards. The court decided, after reading Somberg II, that the damages available to a personal representative for a violation of section 400.023 are those specifically provided by the RRA, and there was no provision therein, unlike the WDA, for damages to the familial survivors of nursing-home residents. Addressing the WDA claim, the court ruled that because the jury had found the sole cause of Williams' injuries was Tandem's professional negligence rather than ordinary negligence, and because section 768.21(8) precludes a decedent's adult children from recovering noneconomic damages resulting from medical malpractice, the heirs were not entitled to such damages. The court let stand the economic damages of $9,631, and entered judgment accordingly.

I. The Propriety of the Order Striking the Noneconomic Damages
The estate first argues that the lower court erred in striking the noneconomic damages returned, because Tandem argued inconsistently as to the measure of damages recoverable on behalf of the decedent, and thus invited any error. It continues that Tandem should not be permitted to take advantage of the change in the law the supreme court announced in Somberg II, in that it failed to preserve the issue of the heirs' entitlement to such damages.
Our review standard over an order granting a motion for new trial based entirely on issues of law is de novo. See Heckford v. Fla. Dep't of Corrs., 699 So.2d 247, 250 (Fla. 1st DCA 1997). In applying that standard to the lower court's application of the law to the facts, we find no error and affirm.
In support of its non-preservation argument, the estate cites Smith v. State, 598 So.2d 1063, 1066 (Fla.1992); Leveritt v. State, 817 So.2d 891, 896-97 (Fla. 1st DCA 2002); Gray Mart, Inc. v. Fireman's Fund Ins., 703 So.2d 1170 (Fla. 3d DCA 1997); and Clay v. Prudential Insurance Co. of America, 670 So.2d 1153, 1154 (Fla. 4th DCA 1996), all of which are factually dissimilar to the case at bar. Leveritt is a typical example of the application of the rule. While Leveritt's appeal from his convictions for DUI manslaughter and vehicular homicide was pending, the Florida Supreme Court decided State v. Miles, 775 So.2d 950 (Fla.2000), holding that the state was not entitled to the statutory presumption of impairment based on blood-alcohol test results. Although Leveritt had not objected during trial to the court's jury instructions on the presumptions of impairment, he sought the benefit of the Miles rule on appeal. While agreeing that the trial court erred in giving the instruction, we nevertheless affirmed because appellant had failed to preserve the issue by timely objecting during trial, and the error was not fundamental.
*374 We cannot accept appellant's argument that Tandem did not preserve the issue which it allegedly benefitted from by reason of the supreme court's decision in Somberg II. Both Tandem and the estate were fully aware during trial that there were two divergent lines of authority on the issue of whether the RRA, apart from the WDA, provides the estate of a deceased resident the right to recover damages for his or her pre-death pain and suffering, and that the issue was pending for review before the supreme court. Once Somberg II resolved such issue, it was the estate, not Tandem, that profited from the decision by obtaining a new trial.
It is true that Tandem relied on certain language in the opinion to undergird its posttrial argument that the noneconomic damages awarded the adult children should be stricken because the RRA contains no language authorizing same, unlike the WDA. Although Somberg II includes statements supporting such argument,[4] the non-preservation rule the estate cites requires that the change in the law directly affect the outcome of the issue that a party raises in a subsequent case. In other words, the change in the law must have binding, precedential effect in order for such party to benefit from it. The issue decided in Somberg II addressed only the question of whether the WDA limited the damages a personal representative could obtain on behalf of a deceased resident under the RRA, not whether the WDA expanded the damages available under the RRA. The court's precise holding was that because section 400.023(1) clearly states the types of damages recoverable in an action brought pursuant to that statute, the provisions of the WDA do not control, and therefore do not limit, the measure of damages authorized by the RRA. Somberg II, 840 So.2d at 1000-01. Not addressed, and therefore not decided by the court, was whether damages provided by the WDA to certain designated classes of beneficiaries could also be recovered by them in an RRA action. While the court below cited language in Somberg II as support for its decision to strike the return of noneconomic damages, such language was not dispositive of the issue before the supreme court; therefore, such statements must be considered only dicta. Consequently, the change in the law brought about by Somberg II had no binding effect over the issue the estate now raises, i.e., that the lower court erred in striking the jury's award of noneconomic damages to Williams' adult children. Accordingly, we conclude the non-preservation rule is irrelevant to such issue.
The estate next complains that the lower court's decision to strike the heirs' survivorship award of noneconomic damages was flawed because it was based on an erroneous interpretation of the RRA. Among other things, the estate points to Somberg II's reference to section 400.023(1), wherein it is stated that the remedies provided are "in addition to and cumulative of other legal ... remedies available to a resident." Id. at 1001. The estate reasons therefrom that the same damages available to an heir under the WDA have thus been incorporated within the RRA for the benefit of the heirs. We cannot agree.
*375 The clearly expressed provisions of section 400.023 permit the resident, personal representative, or other statutorily designated person "to recover actual and punitive damages for any deprivation or infringement on the rights of a resident." § 400.023(1), Fla. Stat. (2000) (emphasis added). As the Fifth District noted in Spilman, "When section 400.023 was first enacted in 1980, it addressed only the rights of residents who survived the violation of their rights and allowed them to seek actual and punitive damages." Spilman, 661 So.2d at 868 (footnote omitted). The court continued that the 1986 legislature specifically addressed the problem of such actions' lack of survivorship by adding language authorizing them to be brought on behalf of the deceased resident by his or her personal representative. Id. at 869.
Since the inception of the RRA in 1980, the damages authorized to be recovered are limited to those which are personal to the resident, and the inclusion of the words "personal representative" by the 1986 amendment was intended to furnish only a right of action surviving the resident's death, and not to extend to the resident's heirs the right to recover the same damages permitted them under the WDA. This conclusion is reinforced by a reference to the language of the WDA and its history. Before the WDA's creation in 1972, there was no common-law right to damages after the death of the person negligently injured by another. See Nissan Motor Co., Ltd. v. Phlieger, 508 So.2d 713, 714 (Fla.1987). The WDA is unique in that it created in favor of certain statutorily designated beneficiaries an independent cause of action for the recovery of damages suffered by themnot by the decedentresulting from the wrongful invasion of legal rights by a tortfeasor. Id. See also Knowles v. Beverly Enters.-Fla., 898 So.2d 1, 4, 2004 WL 2922097 (Fla. Dec. 16, 2004). Section 768.21(3) identifies the types of noneconomic damages recoverable by the adult children if there is no surviving spouse, and they include "lost parental companionship, instruction, and guidance and for mental pain and suffering from the date of injury." If the common law had afforded heirs of a deceased person the right to recover damages, the estate's argument would have more force, because a statute enacted in derogation of common law should be accorded only a strict construction. There was, however, no such right at common law, and nothing in chapter 400 expresses any intent, expressly or remotely, to incorporate the same statutorily created remedies of the WDA within the RRA.
The estate next argues the lower court erred in striking the noneconomic damages returned to the heirs under section 768.21(8) of the WDA, based upon the jury's finding that all of the fault of Tandem was attributable to its professional, rather than ordinary, negligence. The estate contends that the jury's finding was the result of the court's erroneous instruction on professional negligence. It is the estate's position that the specific negligent conduct involved, i.e., leaving Williams unattended in the bathroom, was an act any layperson, such as an unlicensed certified nursing assistant, could have committed; therefore, no evidence was offered to support the charge given. The issue of whether the court gave an erroneous instruction is one we decline to address because, in our judgment, it has not been preserved.
Although the estate did object to the trial court's pretrial decision to instruct the jury on whether Tandem's conduct was professional negligence, it did not object during the charge conference to the actual *376 instruction given on professional negligence. The record discloses that during the pretrial conference, Tandem argued that the WDA count involved the professional conduct of the nurses, while the estate answered that the standard of care should be that of an "ordinary prudent nursing home," or common-law negligence. In deciding to give the charge on professional negligence, the lower court pointed out that the estate intended to call expert witnesses for the purpose of testifying about the professional standard of care and duties of Tandem and its nurses, while also maintaining that the medical-malpractice provisions of chapter 766 or 768.21(8) should not apply. Following the conference, the court entered a pretrial order noting that the estate was asserting a claim involving the professional negligence of professional health-care providers; therefore, because the establishment of such claim involved evidence relating to the professional standard of care, both an instruction and the verdict form would reflect the jury's consideration of both professional and ordinary negligence.
At the charge conference, the estate initially argued that the court should adopt its proposed verdict form as to the WDA claim only, which would allow the jury to decide whether any professional negligence of Tandem contributed to the resident's injuries, but that such question would be inapplicable to the residents'-rights claim. When the court suggested that the jurors be allowed to allocate fault between professional and ordinary negligence without separately designating the allocation under either of the two claims, the estate agreed that such was "the best solution," and the verdict form submitted so read. The conference then took up the subject of the propriety of the instructions to be given, and the estate did not object to the charge on professional negligence, nor did it do so after the court actually instructed the jury.
Florida Rule Civil Procedure 1.470(b) precludes a party from assigning as error the giving of a particular instruction unless the party objects to same at the charge conference. This requirement has been iterated in numerous decisions. See, e.g., Adams v. Royal Exchange Assur., 62 So.2d 591 (Fla.1952); Murray v. Moore, 541 So.2d 694 (Fla. 1st DCA 1989); Starkey v. Chew, 241 So.2d 870 (Fla. 3d DCA 1970). We similarly refuse to address an issue that was not timely preserved.[5]

II. The Propriety of the Court's Refusal to Allow the Estate to Add a Claim for Punitive Damages
Finally, appellant urges that the lower court erred in denying its motions to amend the complaint in order to add a claim for punitive damages. Our review standard of this issue is de novo. See Holmes v. Bridgestone/Firestone, Inc., 891 So.2d 1188 (Fla. 4th DCA 2005) (on reh'g). When a claim for punitive damages is made, the trial court must decide, after the submission of evidence, whether there is a legal basis for the recovery of punitive damages shown by any interpretation of the evidence favorable to the plaintiff. Spilman, 661 So.2d at 873. The Florida Supreme Court has declared the type of evidence necessary to uphold such damages must be
of a "gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire *377 want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them". [sic]

White Constr. Co., Inc. v. Dupont, 455 So.2d 1026, 1029 (Fla.1984) (quoting Carraway v. Revell, 116 So.2d 16, 20 n. 12 (Fla.1959)). Another court has characterized the conduct that would support a claim for punitive damages as negligence evincing such willful, wanton, or intentional misconduct as would warrant sustaining a conviction for manslaughter. Key West Convalescent Ctr., Inc. v. Doherty, 619 So.2d 367 (Fla. 3d DCA 1993).
Appellant initially argues that punitive damages are awardable against Tandem under either of the following two theories: (1) By finding the employer vicariously liable for the wilful or wanton misconduct of the employee, and some fault by the employer which foreseeably contributes to the plaintiff's injury, or (2) by finding evidence of willful or wanton misconduct by a managing agent or officer of the corporation. Schropp v. Crown Eurocars, Inc., 654 So.2d 1158 (Fla.1995).
Appellant asserts the trial court reversibly erred in refusing to allow it the opportunity to amend the complaint by adding a claim for punitive damages, because the court applied the wrong legal standard. It points out that the court relied on section 768.72(3), Florida Statutes (2000), which provides that an employer, in order to be found vicariously liable for the egregious conduct of an employee, must have actual knowledge of the employee's conduct, and the court concluded the evidence did not support such finding. The estate contends the court's legal conclusion was incorrect because the provisions of section 768.72(3) are specifically made inapplicable to RRA claims by section 768.735(1), Florida Statutes (2000).
The difficulty with the estate's argument is that it never brought the statutory exclusion to the lower court's attention. Indeed, in its two motions seeking leave to add the punitive-damages claim, the estate did not distinguish between claims for punitive damages under section 400.023, and those under section 768.21. In our judgment, the estate's failure to point out this distinction during trial precludes it from raising it now for the first time on appeal.
In any event, the estate does not show that the trial court erred by disallowing it from amending the complaint under either of the two theories stated in Schropp. Under the first, that of vicarious liability, the estate contends that Nurse Haynes' conduct in leaving Williams alone on a toilet while she answered other residents' calls was egregious employee conduct that warranted a jury's consideration of its requested punitive-damages claim. Both at trial and in its brief, however, the estate repeatedly emphasized that Nurse Haynes testified she did not know that Williams was a high-fall risk, and that, had she known, she would have taken special precautions and not left Williams alone. The estate is thus unable to demonstrate that the trial court erred in concluding that Nurse Haynes' conduct failed to satisfy the standard necessary to sustain an award of punitive damages, i.e., that it was wilful, wanton, gross or flagrant, reckless, or consciously indifferent to the rights of the resident.
As to the second method, that of direct corporate liability, the estate points out that Williams' chart stated in numerous places that she was at a high risk for falls, that she was at times confused and *378 disoriented, and that Tandem's established policy required all residents be placed in the Falling-Stars program after a fall,[6] but that Tandem did not assign Williams to the program initially, or after her first fall. The estate also claims that staff and residents had complained about insufficient staffing, that many other residents had fallen, and that Tandem took no steps to protect residents like Williams from falls.
In support of this alternative theory of liability, the estate cites First Healthcare Corp. v. Hamilton, 740 So.2d 1189 (Fla. 4th DCA 1999), wherein the Fourth District upheld an award of punitive damages on facts showing that the nursing home knew when the resident entered the facility that he had dementia and had been admitted because he needed supervision to keep him from wandering; that he was taking seven medications, including psychotropic drugs; and that he had a visual impairment. The resident was nevertheless allowed to wander off the premises and repeatedly cross a four-lane highway. Staff also knew that a sliding glass door leading outside from the resident's room was stuck in an open position, yet they never followed through on their promise to repair it, with the result that he eventually wandered from the facility unaccompanied, fell into a pond, and drowned. The nursing-home administrator thereafter prepared a fraudulent document which attempted to cover up its lack of care by placing blame on the decedent's widow. Id. at 1197 & 1200 (on mot. for reh'g).
Although there are similarities between the facts in Hamilton and those at bar, i.e., the impairments of the respective residents and the failure by the corporate defendants to take corrective action, we are of the opinion that the dissimilarities in the present case make it an unsuitable means for the prosecution of a punitive-damages claim. First, although there was evidence of Williams' occasional disorientation, there was none of dementia, as suffered by the resident in Hamilton. Additionally, although Tandem was negligent in failing to take measures which would reasonably ensure Williams' protection, despite its notice that Williams had previously fallen at the facility, it cannot be said that such behavior approached the clearly egregious conduct of the home in Hamilton, which continued to remain indifferent to its resident's safety, notwithstanding its notice of his repeated acts that exposed him to the threat of serious harm. Finally, unlike Hamilton, the present case does not involve a situation in which the corporate employer attempted to conceal its misconduct by falsely accusing another person of its own misdeeds.
The most that can be said of Tandem is that it was negligent, perhaps grossly negligent, in failing to take corrective measures in the face of a known risk that might have made Williams more secure against the danger of injury from falls. Such failure does not, in our judgment, per se equate to egregious conduct sufficient to sustain an award of exemplary damages. In our opinion, the facts at bar are far more similar to the circumstances in White Constr. Co., Inc. v. Dupont, 455 So.2d 1026 (Fla.1984), than those in Hamilton. There, a large 80,000-pound loader, 22 feet in height, whose brakes the employer knew were defective, was backed at top speed into a work area where it collided with a parked tractor-trailer, seriously injuring the driver standing next to it. In *379 concluding that the employer's conduct did not meet the standard necessary for a punitive-damages award, the supreme court made the following pertinent comments:
The evidence in this case showed that the loader's brakes had not been working for some time, and that the petitioners were aware of this fact. Although this evidence would be sufficient to show that the petitioners were negligent, it is not sufficient, as a matter of law, to submit the issue of punitive damages to the jury.
Id. at 1028. The court then recited the requisite standard quoted supra at page 377.
In our opinion, just as the negligence of the corporate employer in Dupont could not support a conviction for manslaughter, neither do we consider that of Tandem sufficient for such purpose. In following Dupont, we are not unaware that section 400.023(5) of the RRA provides its own statutory standard necessary to sustain an award of punitive damages. We agree with the Fourth District's interpretation that the statute "adopts the common law standard, and not ... some less stringent standard applicable exclusively to nursing home residents." Hamilton, 740 So.2d at 1197. Given the fact that the standard approved in Dupont applies to actions for deprivations of a resident's rights, we conclude the trial court correctly decided that no legal basis existed for the submission of the punitive damages claim to the jury.
AFFIRMED.
KAHN and VAN NORTWICK, JJ., Concur.
NOTES
[1] The third, a survivorship claim, brought under section 46.021, Florida Statutes, was dismissed during trial, and the dismissal is not an issue on appeal.
[2] The damages returned were not restricted on the verdict form to either of the two claims because the trial court had previously decided that the damages would be the same under both theories.
[3] In so deciding, the court noted that the verdict form misled the jury in that it did not permit assessment of noneconomic damages for the benefit of the resident.
[4] Among other things, the court observed that the RRA "explicitly and clearly create[s] a cause of action separate and independent from the Wrongful Death Act with its own damages." Somberg II, 840 So.2d at 1001. Other language in Somberg II is, however, supportive of a contrary view, which the estate refers to in its argument, discussed infra, that the trial court erred in its construction of the RRA as precluding an award of noneconomic damages to the resident's heirs.
[5] In so concluding, we have not overlooked appellant's argument that it did object to a re-instruction of the professional-negligence charge given the jury after it had begun its deliberations. As indicated from the authorities previously cited, this objection came too late to preserve the error.
[6] The Falling Stars program is designed to notify all staff members of a resident's danger of falling. The program is carried out by placing gold stars on designated locations where the notice would be conspicuously displayed, such as on the resident's nameplate outside the resident's door, above his or her bed, etc.