# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

DANA D. JONES, as personal representative of the
Estate of Doscina C. Pendleton, deceased,

Appellant,

v.

MG BRADENTON SUBTENANT, LLC; RENEW MG TENANT, LLC;
RENEW MG TRS, LLC; MERRILL GARDENS, LLC; THE MERRILL
GROUP, INC.; KAREN ARWAY; and SHANNON ENLOW (as to
TRUEWOOD BY MERRILL, BRADENTON),

Appellees.

No. 2D2024-1971
_____

December 3, 2025

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for
Manatee County; Edward Nicholas, Judge.

Joanna Greber Dettloff, A. Lance Reins and Kyle D. Ross of Mendes,
Reins & Wilander, PLLC, Tampa, for Appellant.

Jason M. Azzarone and Lindsay E. DeCarlo of La Cava, Jacobson &
Goodis, P.A., Tampa, for Appellees MG Bradenton Subtenant, LLC,
Renew MG Tenant, LLC, and Merrill Gardens, LLC.

No appearance for remaining Appellees.


SILBERMAN, Judge.

Dana D. Jones, as personal representative of the Estate of Doscina

C. Pendleton, appeals a nonfinal order denying his motion for leave to

amend his complaint to assert a claim for punitive damages against MG Bradenton Subtenant, LLC; Renew MG Tenant, LLC; and Merrill Gardens, LLC (hereinafter all jointly referred to as the MG Entities). We affirm.

## I. BACKGROUND

Mr. Jones's mother, Doscina Pendleton, was an elderly, terminally ill woman under hospice care, residing in the memory care unit of Truewood By Merrill from December 31, 2018, until she passed away on December 25, 2020. Truewood is an assisted living facility. On the night of her death, Ms. Pendleton was found to be unresponsive by Taylor Vespucci, a medical technician working at Truewood.

Ms. Vespucci testified in her deposition that she helped Ms. Pendleton to bed between 6 p.m. and 8 p.m. She then checked on her one more time, and about "an hour or two" later, during her 10 p.m. rounds, she found Ms. Pendleton unresponsive. Ms. Pendleton's knees were on the floor and her head was lodged between the mattress and the bedrail. A progress note indicated that the time of this discovery was 10:30 p.m.[1]

Mr. Jones's expert witness, Dr. Michael Gloth, opined in his affidavit that when Ms. Pendleton's head became lodged between her mattress and bedrail, it resulted in a fracture to her cervical spine which substantially contributed to her death.

Mr. Jones filed a complaint alleging claims of negligence and wrongful death against the assisted living facility and its owners, operators, managers, and management company, Merrill Gardens, LLC (referred to individually as the Management Company). Mr. Jones

---

[1] The lack of certainty regarding the amount of time that had passed between checks does not alter our analysis.

thereafter sought permission from the trial court to amend his complaint to add a claim for punitive damages against the MG Entities.

Mr. Jones argued that punitive damages were warranted because the alleged understaffing at the facility resulted in Ms. Pendleton's injuries and death. He asserted that Ms. Pendleton, who had a history of multiple falls, was kept in a broken bed with unsafe bedrails, even though a safer bed with no rails had been ordered and placed in her room by hospice. He contended that this contributed to Ms. Pendleton's injuries and death. He also argued that the facility had notice that it lacked the ability to properly care for Ms. Pendleton and that nonetheless one of the managers instructed concerned staff members that the facility could provide the care that Ms. Pendleton needed. Finally, Mr. Jones asserted that the facility never updated Ms. Pendleton's care plan to address her risk for falls from bed or to implement any new interventions.

The trial court conducted a hearing on Mr. Jones's motion to amend his complaint. During the hearing, Mr. Jones relied on the affidavits of two expert witnesses and the deposition testimony of several other witnesses. The evidence addressed various topics including staffing, training, the falls by Ms. Pendleton and other residents, the care provided to Ms. Pendleton, communications among personnel at Truewood, and communications with the Management Company. The bulk of the evidence relating to the management staff at Truewood and the Management Company involved staffing decisions.

In its order denying the motion for leave to amend, the trial court determined that the key issue was "staffing, and whether the [MG Entities] had sufficient staff on duty the night that Ms. Pendleton passed" to be attentive to her care. The court discussed the extensive evidence

3

that was before it and made the following findings: "there WAS the [requisite] level of staff on duty the night of Ms. Pendleton's death and the staff checked on her a reasonable amount of times immediately prior to her death"; there was no reliable or credible evidence that the facility was understaffed generally or on the night in question; there was "no evidence that [the MG Entities] had the requisite actual knowledge of any dangerous conditions which were consciously disregarded such that punitive damages are warranted"; and "less than 2 hours had passed between the time that a staff member last checked on her and when she was found deceased. It cannot be reasonably argued that less than two hours is not a reasonable amount of time between checks, even given Ms. Pendleton's very poor prognosis."

## II. STANDARD OF REVIEW

In reviewing the denial of a motion for leave to amend to add a claim for punitive damages, we apply a de novo standard of review. *Bric McMann Indus. Inc. v. Regatta Beach Club Condo. Ass'n*, 378 So. 3d 652, 654 (Fla. 2d DCA 2023); *John Knox Vill. of Cent. Fla., Inc. v. Est. of Lawrence*, 379 So. 3d 1205, 1209 (Fla. 5th DCA 2024).

## III. ANALYSIS

A. *Assisted Living Facilities' Duty of Care*

Florida law imposes several requirements on facilities like Truewood. Any facility that claims to provide special care for people with Alzheimer's disease or related disorders must "[h]ave a physical environment that provides for the safety and welfare of the facility's residents." § 429.178(3), Fla. Stat. (2023). "Staff must be qualified to perform their assigned duties consistent with their level of education, training, preparation, and experience." Fla. Admin. Code R. 59A-36.010(2)(b). Although the Florida Administrative Code mandates

4

minimum weekly staffing requirements for assisted living facilities, it further provides that, regardless of minimum staffing requirements, all facilities "must have enough qualified staff to provide resident supervision." Fla. Admin. Code R. 59A-36.010(3)(a)-(b). Assisted living facilities are also required to "provide care and services appropriate to the needs of residents accepted for admission to the facility" and "must offer personal supervision as appropriate for each resident." Fla. Admin. Code R. 59A-36.007(1).

B. *Pleading Requirements for Punitive Damages*

When a plaintiff seeks to amend a complaint to add a claim for punitive damages, a trial court should grant the request only when "there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." § 429.297(1); *see also* Fla. R. Civ. P. 1.190(f) ("A motion for leave to amend a pleading to assert a claim for punitive damages shall make a reasonable showing, by evidence in the record or evidence to be proffered by the claimant, that provides a reasonable basis for recovery of such damages.").

To recover punitive damages at trial, a plaintiff must prove by clear and convincing evidence "that the defendant was personally guilty of intentional misconduct or gross negligence." § 429.297(2). " 'Intentional misconduct' means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." § 429.297(2)(a). " 'Gross negligence' means that the defendant's conduct was so reckless or wanting in care that it

5

constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." § 429.297(2)(b).

"Punitive damages are a form of extraordinary relief for acts and omissions so egregious as to jeopardize not only the particular plaintiff in the lawsuit, but the public as a whole, such that a punishment—not merely compensation—must be imposed to prevent similar conduct in the future." *Monsanto Co. v. Behar*, 417 So. 3d 383, 387 (Fla. 3d DCA 2025) (quoting *BDO Seidman, LLP v. Banco Espirito Santo Int'l.*, 38 So. 3d 874, 876 (Fla. 3d DCA 2010)); *see also Publix Super Mkts., Inc. v. Levi*, 399 So. 3d 1212, 1214 (Fla. 2d DCA 2024) (holding that to establish gross negligence, "a plaintiff must reasonably show that a reasonable, prudent person in the defendant's shoes would have known that the conduct 'would probably and most likely result in injury to persons or property' " (emphases omitted) (quoting *Bridges v. Speer*, 79 So. 2d 679, 682 (Fla. 1955))).

At the pleading stage, a plaintiff is not required to prove their entitlement to punitive damages by clear and convincing evidence. *Deaterly v. Jacobson*, 313 So. 3d 798, 801 (Fla. 2d DCA 2021). Instead, there must only be an evidentiary showing that provides a reasonable basis for the recovery of punitive damages. § 429.297(1).

C. *Direct and Vicarious Liability for Punitive Damages*

A corporation can be held liable for punitive damages if the plaintiff establishes either vicarious liability or direct liability.

> [V]icarious liability[] requires willful and wanton misconduct on the part of the employee and some fault on the part of the employer, not necessarily willful or wanton misconduct, which foreseeably contributed to the plaintiff's injury. [Direct liability] requires evidence of willful and wanton misconduct by a managing agent or officer of the corporation.

6

*Beverly Enters.-Fla., Inc. v. Spilman*, 661 So. 2d 867, 873 (Fla. 5th DCA 1995).

> In order to hold a corporate employer vicariously liable for punitive damages for the acts of its employees, the plaintiff must establish: (1) fault on the part of the employee that rises to the level of willful and wanton misconduct and (2) some fault on the part of the corporate employer that rises to the level of at least ordinary negligence.

*Est. of Despain v. Avante Grp., Inc.*, 900 So. 2d 637, 640-41 (Fla. 5th DCA 2005).

Pursuant to section 429.297(3), a plaintiff may recover punitive damages under the theory of direct liability "for the conduct of an employee or agent only if" the employee is guilty of intentional misconduct or gross negligence and if one of the following requirements is met:

> (a) The employer, principal, corporation, or other legal entity actively and knowingly participated in such conduct;
> (b) The officers, directors, or managers of the employer, principal, corporation, or other legal entity condoned, ratified, or consented to such conduct; or
> (c) The employer, principal, corporation, or other legal entity engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by the claimant.

*See also Fla. Power & Light Co. v. Dominguez*, 295 So. 3d 1202, 1205 (Fla. 2d DCA 2019).

For direct or vicarious liability to be imposed, a plaintiff must show evidence of culpable conduct by the "employer, principal, corporation, or other legal entity," which includes an individual acting as a managing agent. However, a managing agent "is more than just a manager or midlevel employee." *Id.* at 1205.

D. *Mr. Jones's grounds for seeking punitive damages*

7

As summarized above, Mr. Jones made several arguments in support of his motion for leave to amend the complaint to assert a claim for punitive damages. We have thoroughly considered the record and each of the arguments made in the trial court and on appeal and conclude that the trial court did not err in denying the motion.

We recognize that insufficient staffing may support a claim for punitive damages. In *Estate of Youngblood v. Halifax Convalescent Center, Ltd.*, 874 So. 2d 596, 606 (Fla. 5th DCA 2004), the court held that the award of punitive damages was a jury question where the resident's mistreatment was connected to the nursing home operator's "conscious decision to keep the facility chronically understaffed due to budget problems."

The difficulty with Mr. Jones's argument is that the evidence simply does not establish intentional misconduct or gross negligence that would support the imposition of direct or vicarious liability on the MG Entities. As the trial court found, the evidence "falls far short of the strict burden imposed by the Florida [L]egislature to allow for a claim of punitive damages against the corporate defendants here." The evidence does not "reveal any specific conduct on the part of the corporate Defendants" satisfying that burden.

Further, even if Truewood was understaffed, there was no evidence that this contributed to Ms. Pendleton's injury and death on December 25. There were two employees working in the memory care unit that evening, and there were about fifteen residents. Ms. Vespucci testified as to the approximate time frame when she was helping and checking on Ms. Pendleton before finding her deceased. There was no evidence that the failure to have more staff violated rules relating to the facility, that residents would be checked more often than every two hours if more staff

8

was working, or that Ms. Pendleton's injury and death would not have occurred if someone had checked on her earlier than when she was discovered during the 10 p.m. rounds.

Mr. Jones's argument that the decision by the facility's management to keep Ms. Pendleton in a broken bed with unsafe bedrails warrants punitive damages similarly fails. There was no evidence that a managing agent of the Management Company knew about the broken bed or that the MG Entities had that information. *See Carpenters Home Ests., Inc. v. Sanders*, 286 So. 3d 830, 832 (Fla. 2d DCA 2019) (concluding that punitive damages were not appropriate where there was "no admissible evidence indicating that any officer, director, or manager of the nursing home defendants had 'condoned, ratified, or consented to' any of the staff's actions or incidents of inaction").

While an employee testified that she complained to her boss multiple times about the broken bed, her boss was the memory care director. The memory care director reported to the resident care director and that individual reported to the executive director at the facility. Even if the memory care director was informed about the broken bed and failed to have Ms. Pendleton placed in the new bed, his actions do not support the direct or vicarious liability of the Management Company or the MG Entities because he was, at best, a manager or midlevel employee. *See Fla. Power & Light Co.*, 295 So. 3d at 1205.

Further, there is no evidence that the memory care director passed the information about the bed to the resident care director or the executive director. Thus, even if one of those individuals could be considered a managing agent, the evidence still does not establish that they or the MG Entities had knowledge of and consciously disregarded dangerous conditions that would warrant the potential imposition of

9

punitive damages. This analysis equally applies to the argument that the facility had notice that it lacked the ability to properly care for Ms. Pendleton.

Finally, Mr. Jones alleged that the facility never updated Ms. Pendleton's care plan to address her risk for falls or to implement any new interventions. In *Estate of Williams ex rel. Williams v. Tandem Health Care of Florida, Inc.*, 899 So. 2d 369, 378 (Fla. 1st DCA 2005), the court discussed a claim by the resident's estate "that staff and residents had complained about insufficient staffing, that many other residents had fallen, and that [the facility] took no steps to protect residents . . . from falls." The resident's chart noted in several places that she was confused, disoriented, and at a high risk for falls. *Id.* at 377-78. Although the facility's "policy required all residents be placed in the Falling-Stars program after a fall," the resident was not assigned to the program initially or after her first fall. *Id.* at 378.

The First District held that a punitive damages claim was not appropriate. *Id.* The court agreed that "although [the facility] was negligent in failing to take measures which would reasonably ensure [the resident's] protection, despite its notice that [she] had previously fallen at the facility, it cannot be said that such behavior approached" clearly egregious conduct or an indifference to its resident's safety. *Id.*

Here, although Truewood may have been negligent in not implementing a new care plan, we cannot agree that this demonstrates a conscious disregard or indifference to the life, safety, or rights of Ms. Pendleton. Nothing in the record suggests that a managing agent or the MG Entities knew about any failure by the facility to follow through with service plans or knew that Ms. Pendleton's service plan was not implemented.

10

Although the circumstances surrounding Ms. Pendleton's death are tragic, we agree with the trial court's conclusion that the evidence does not reach the level necessary to allow a claim for punitive damages against the MG Entities. Accordingly, we affirm the order denying Mr. Jones's motion for leave to amend the complaint to assert a claim for punitive damages.

Affirmed.

ROTHSTEIN-YOUAKIM and SMITH, JJ., Concur.

_____

Opinion subject to revision prior to official publication.